Sullivan, }
Nov. 6, 1912. }

## MARCOTTE v. MAYNARD SHOE CO.

In an action for negligence against employers, certain evidence deemed sufficient
to warrant a finding that injury resulted to an inexperienced servant from
dangers which were not obvious and the risk of which he did not assume, and
concerning which the defendants omitted to give him adequate warning or
instruction.

The denial of specific instructions is not exceptionable if they are given so far as
applicable to the evidence and with only such modifications as are warranted by
the facts disclosed.

The denial of a request for specific instructions is not erroneous when their sub-
stance is included in the charge.

In an action for negligence against employers, evidence of prior accidents which oc-
curred under similar circumstances is admissible to show the dangerous character
of machinery upon which the plaintiff was at work at the time of his injury.

CASE, for personal injuries sustained by the plaintiff while
employed in the rubber shop of the defendants' shoe factory at
Claremont. Trial by jury and verdict for the plaintiff. Trans-
ferred from the November term, 1911, of the superior court by
*Wallace*, C. J.

The plaintiff was injured while working upon a machine known
as a calender, which consisted in part of three hollow, metal cylin-
ders set one over another in an iron frame, and here designated as
C, D, and E, from above downward. The cylinders were about
six feet in circumference and could be heated by steam. They
were adjustable and could be brought into close contact or sepa-
rated several inches. Cylinders C and E revolved in the same
direction, and D in the opposite direction. At high speed they
made a complete revolution in about fourteen seconds. The
function of the machine was to press material which was run
through it and at the same time apply heat. The bottom of the
lowest cylinder (E) was a few inches above the floor, and the top
of the highest one (C) was about six feet above the floor. In front
of the machine, at a height opposite the point of contact between
C and D and from two to three feet therefrom, was a small roll
(A) upon which the cloth which was to be run through the machine
was placed. From A the cloth passed between C and D; thence
over roll F, situated at the back of the machine at about the same
height as A and distant about fifteen inches from the point of

contact between C and D; thence downward around roll G, situated directly beneath F and a little below the point of contact between D and E; thence between D and E, to be wound around roll B, situated fifteen inches above the floor and almost directly beneath roll A. In the operation of the machine for frictioning, a substance known as friction gum or composition was put upon C on the front of the machine until it covered the surface of D to a depth of about an eighth of an inch. Then the cloth on A was fed between C and D and took the course above described. As the cloth passed between the cylinders the gummy substance was pressed into it by C and D, the latter being heated.

The cloth sometimes was torn or wrinkled in passing between C and D; and in that case it was necessary that an employee should grasp the edge of the fabric and guide it around F and G, and between D and E. This was what the plaintiff was doing at the time of his injury. While so engaged at the back of the machine, in a place which he alleged was insufficiently lighted, his left hand adhered to the sticky fabric and was drawn between the cylinders, the injuries thus sustained resulting in the loss of his arm. The plaintiff's evidence tended to prove that he was ignorant of the peculiar danger incident to the work of guiding the cloth between the hot cylinders and that he had received no warning or instruction concerning it.

The defendants excepted to the denial of their motions for a nonsuit and the direction of a verdict in their favor, and to the refusal of the court to give the following instructions:

"(1) If the master had provided sufficient lamps on the premises for use of the employees, so that they could readily obtain them by asking for them, it had done its duty as to lighting; and if the foreman of the shop had neglected to have a light put on under the circumstances, still the master would not be liable.

"(2) Unless the absence of light No. 2 helped to cause the injury, then the question of the absence of that light is immaterial and you need not consider it, and it is to have no effect upon your verdict.

"(3) If you believe the plaintiff's testimony, then the absence of light No. 2 is immaterial and you need not consider it."

The court charged the jury in part as follows:

"If all the conditions of this machine upon which the plaintiff was working were known to him, and he appreciated the danger therefrom, he assumed the risk of being injured and cannot recover.

If the plaintiff had knowledge of the facts sufficient to charge him with knowledge of the danger, he assumed the risk of injury. On the other hand, if he did not know of the danger, or as a person of ordinary prudence ought not to have known of it or appreciated it, then he has not assumed the risk and is not barred from recovery on that account. If he did know and appreciate the danger from the rolls and the sticky cloth on the rolls, in the situation in which he was placed, then he cannot recover because it was a risk which he assumed. If he did not understand and appreciate, then he is not precluded from recovering on this ground.

"It is the duty of the master to provide the servant with a reasonably safe place in which to perform the work required to be done, and to use ordinary care, when putting an employee at work about dangerous machinery with which he is not acquainted and where he cannot reasonably be expected to know about the dangers of his work, to instruct him as to his duties and warn him as to the dangers incident to his employment. As the case stands here, these are the only matters in which the plaintiff complains the defendants have been remiss in their duty to him, namely, failure to supply him with a proper place in which to work—that is, a well lighted place, because that is the only complaint he makes— and failure to instruct and warn him in regard to the dangers of the business. The plaintiff complains that the defendants were remiss in their duty of lighting the place of work in two respects. First, the plaintiff says that the defendants did not furnish sufficient lights whereby the place of the accident could be properly lighted; that is, he says that generally they had not made arrangements for a sufficient number of lamps whereby this place would be properly illuminated, if all were lighted. Second, he says that one of the lamps placed nearest the work was not lighted at the time of the accident.

"As to the first complaint, it was the duty of the defendants to exercise ordinary care to furnish suitable lamps or lights at the place of work; and if they failed to do so, they were remiss in their duty. As to the second complaint, if the defendants furnished sufficient and suitable lights or lamps for the work, to be used by the servant as needed in the course of the work, they performed their full duty in this respect and are not liable for the negligence or failure of their servants to light these lamps, except in one contingency to which I will now call your attention. If the lamp in question—that is, No. 2 at the back of the machine—was not

lighted for so long a time that the defendants ought to have discovered this neglect by ordinary care, and this light was essen-- tial to the proper lighting of the place, then if the defendants did not see that it was lighted their failure to do so would be negligence on their part. If the defendants installed that light and furnished for the servants sufficient lamps to be used whenever it was necessary, they are not to blame because a fellow-servant of the plaintiff failed to light that lamp, unless it had been unlighted and unused for such a long time that they ought, in the exercise of ordinary care, to have known that it was habitually unlighted. In that case they would be liable. The bulb was actually gone for two weeks. There is some evidence you will consider whether they furnished enough of those that could be used any time when needed.

"Unless the absence of light No. 2 or any of the lights helped to cause the injury, then the question of the absence of light is. immaterial, you need not consider it, and it will have no effect on your verdict; and this is so whether you find the absence of light is wholly immaterial on the testimony of the plaintiff, or any of the other witnesses in the case. This is a material thing and one you want to carefully consider. The defendants say not only that they performed their duty in respect to lighting the premises, but. that whether they did or not is wholly immaterial. You will consider carefully how that is; because if the defendants were remiss in their duty in this respect, and their negligence in this. particular had nothing to do with the accident, it is a matter which you will not consider in determining the case. You will not hold the defendants liable on that account if it was not the cause of the plaintiff's injury."

The defendants excepted "to so much of the charge as instructs the jury (1) that the master is bound to provide a safe place to work, because it is inapplicable to this case, and (2) to so much of the charge as instructs that the master is liable if he had provided lamps and had failed to see that they were lighted."

*Edward R. Buck* (of Vermont) and *Hollis & Murchie* (*Mr. Hollis* orally), for the plaintiff.

*Samuel W. Emery* (of Massachusetts) and *Hosea W. Parker* (*Mr. Emery* orally), for the defendants.

BINGHAM, J. The defendants say that their motions for a nonsuit and a verdict should have been granted and assign the following reasons: (1) That there was no evidence of any prior accident due to the sticky condition of the friction, from which it could be found that the defendants knew of this source of danger and were chargeable with a duty to warn the plaintiff; (2) that the absence of light was in no sense a contributing cause of the accident; (3) that it was impossible the accident should have happened by reason of the plaintiff's inability to withdraw his hand from the friction because of its sticky condition; that of necessity he had to let go of the friction while it was passing under roll G, and therefore he could have done the same thing before his hand came in contact with rolls D and E; (4) that the plaintiff knew and appreciated the danger attending the work of guiding the friction up to rolls D and E, and assumed the risk.

It appeared in evidence that the plaintiff received his injury within a minute after he was sent to the rear of the machine to feed the friction into the rolls. He had never worked there before, and was not instructed as to the safe method of doing the work or warned of the dangers he was liable to encounter. The work called for quick action and a thorough knowledge of conditions. The place was insufficiently lighted. Light was necessary to enable one to judge accurately of the progress of the friction toward the calender rolls and the distance from the rolls at which the operative should remove his hand from the friction to avoid injury. The heat of the rolls gave some warning of the approach to danger, but was inadequate on account of the added peril due to the sticky condition of the friction. It was conceded that the friction was sticky. The extent to which this quality was present was in dispute. The plaintiff testified that when his left hand was four or five inches from rolls D and E, he undertook to withdraw it, but was unable to do so as it stuck to the friction. There was also evidence that one would experience as much difficulty in withdrawing his hand from the friction as he would if it were stuck between two sheets of sticky fly paper, and that at the time of the accident the composition of which the friction was made was so sticky that it held the plaintiff upon roll D for twenty-five minutes after roll E had been lowered and until the doctor came and removed him. It took ten thirty-sixths of a second for the friction to move toward the rolls one inch, and a little more than a second for it to move four or five inches. It is thus seen that the sticky condition

of the friction would not have to be great to occasion the delay or interference necessary to make the difference between safety and danger; and that this circumstance, or the absence of adequate light, or both combined, could have been found to have contributed to cause the accident.   In view of the nature of the work, the circumstances under which it was being conducted, and the plaintiff's inexperience, it cannot be said that the danger was so obvious that the plaintiff must have known and appreciated it and assumed the risk.   It was rather a question of fact for the jury and was properly left to them to determine.

The contention that it was a physical impossibility for the plaintiff to have guided the friction with his left hand below and under roll G and between it and roll E, without letting go, and that the accident could not have happened as he testified, is not supported by the facts presented by the record.   Roll G rested in an adjustable socket twenty inches above the floor and from five to eight inches distant from roll E.   This does not disclose that it was impossible for the plaintiff to have done what he says he did.

At the time of the accident to the plaintiff, the defendants had been manufacturing friction at their plant for about seven years, using the same formula the last three years at least; and for. two weeks or more just prior to the accident, the work at the rear of the calender machine had been carried on without the aid of sufficient light.   If evidence of prior accidents would have aided the jury in arriving at the conclusion that the defendants were aware of the dangers which an inexperienced employee would encounter while feeding friction into the rolls at the rear of the machine,  and have laid a basis for the imposition of a duty to warn and instruct, its absence is of no moment, as there was other evidence from which the same conclusion could have been drawn.   The defendants knew or ought to have known of the sticky character of the friction, the absence of adequate light, the speed of the rolls, and the consequent danger an inexperienced employee was liable to encounter in performing the service.   This would justify the imposition of a duty to warn and instruct.

The first request for instructions was given so far as it was applicable to certain conclusions of fact that might be drawn from the evidence.   This was all the defendants were entitled to.   But to the extent that the evidence warranted the finding of other facts rendering the previous conclusion immaterial, additional instructions were given to meet the changed condition.   The addi-

tional instructions were proper. *Smith* v. *Railroad*, 73 N. H. 325; *Klineintie* v. *Company*, 74 N. H. 276; *Leazotte* v. *Company*, 74 N: H. 480.

The second request was given in substance. That the language employed was different is unimportant. *Bond* v. *Bean*, 72 N. H. 444, 446.

The third request was properly denied. It required the court to instruct the jury that they must find that the absence of light No. 2 was not a contributing cause of the accident, if they believed the plaintiff's testimony; in other words, that there was no evidence in the case from which it could be found that the absence of light contributed to cause the accident. It was but another method of raising the same question heretofore considered upon the defendants' second assignment of error to the denial of their motion for a nonsuit. Upon this question the jury were instructed that "unless the absence of light No. 2 or any of the lights helped to cause the injury, then the question of the absence of light is immaterial, you need not consider it, and it will have no effect on your verdict; and this is so whether you find the absence of light is wholly immaterial on the testimony of the plaintiff, or any of the other witnesses in the case." This instruction was applicable to the evidence and was all the defendants were entitled to.

The charge, so far as it considered the duty of the master as to providing the plaintiff a safe place to work, had to do simply with the question whether the light furnished was reasonably suitable to enable the plaintiff to perform his work with safety and bore directly on the increased danger he was liable to encounter if it was not. No satisfactory objection to this part of the charge has been suggested, and we can conceive of none. It was clearly applicable to the evidence in the case. The second exception to the charge raises the same question previously considered under the first request for instructions.

When the plaintiff offered to prove by the witness Quirk that prior to the plaintiff's accident other workmen had been injured upon the same machine, it was conceded that the accidents about which the plaintiff was seeking to inquire had occurred on the front side of the machine, that they were not due to the sticky condition of the composition, and whether it was dark or light at the time was not suggested. The court thereupon found that the conditions under which these accidents occurred were not suffi-

ciently similar to warrant the admission of the testimony and, in its discretion, excluded it. This ruling, as applied to evidence of prior accidents happening under the conditions enumerated, was the law of the trial. *Batchelder* v. *Railway*, 72 N. H. 329. But as to evidence of other accidents, happening under different conditions, it was of no moment, for the conditions might be similar to those under which the plaintiff received his injury. The court, until the conditions were shown, could be in no position to rule; and the plaintiff, if not permitted to show them, could not preserve his rights. This was the situation confronting counsel and court in the trial of this case; for later the defendants' counsel, in examining a witness who at the time of the accident to the plaintiff was feeding friction into the rolls at the rear of the same machine, but at the opposite end of the roll, asked him "if his hand got hurt that night in the machine," and the plaintiff excepted. In the discussion that followed as to the admissibility of the testimony, the plaintiff's counsel said they had no objection to the question if the defendants' counsel wished to go into the subject, and to this statement the defendants excepted.

As the evidence disclosed that the conditions under which the employee was working were similar, if not the same, as those attending the plaintiff at the time he received his injury, the question was no doubt competent. *Saucier* v. *Spinning Mills*, 72 N. H. 292. If the defendants were to be permitted to go into the subject of other accidents, it was not prejudicial for the plaintiff's counsel to suggest to the court that they should expect the same treatment, and this is what their statement amounts to. When Maynard, the sole owner of the corporation, was being cross-examined by the plaintiff, he was asked if others besides Marcotte had been injured in the machine, and the defendants excepted. The question was ruled out. Whether it was excluded in the discretion of the court, or as matter of law, does not appear. It called for the witness' knowledge of the occurrence of other accidents. If he did not know of their occurrence, the question would not help the plaintiff or injure the defendants. If he did know of them, the plaintiff was entitled to have the court or jury determine whether the conditions under which they happened were the same or similar to those under which the plaintiff received his injury; and if they were, to have them considered by the jury on the question of the defendants' liability. *Colburn* v. *Groton*, 66 N. H. 151. The plaintiff was cross-examining the real defendant

in the suit.   He could not know whether the witness knew of other accidents occurring under similar conditions without inquiry, and this he was not permitted to make.   The question was withdrawn, and the jury instructed to disregard it.   If any one was prejudiced by what transpired, it would not seem to be the defendants.

*Exceptions overruled.*

All concurred.