Hillsborough, }
Jan. 1, 1924. }

### Henry A. Romani *v.* Boston & Maine Railroad.

### William Cain *v.* Same.

In the application of the doctrine of the last clear chance, inability to control the situation is to be determined by the rule of reasonable conduct under all the circumstances and not merely by the question whether it was physically possible for the party to have prevented the injury.

Whether a traveler at a highway crossing could have seen the approach of a locomotive, of which only the tip of the smokestack was barely discernible, was properly submitted to the jury; the practical question is whether if he had looked up the track as the average person would have looked, he would have seen an approaching locomotive, or so looking would have seen nothing.

In an action against a railroad for injuries received from collision with its train at a highway crossing, evidence that at the time of the accident the defendant had other and more efficient warning signals in operation at other highway crossings is admissible.

The trial justice, in his charge, is entitled to select his own phraseology and to otherwise arrange his instructions in such order or sequence as seems to him the most appropriate form.

Actions, to recover damages for personal injuries. The cases were tried together, with verdicts for the plaintiffs. Subject to exception, the superior court, *Branch*, J., denied the defendant's motions for directed verdicts. There were also exceptions to the admission of evidence, to the remarks of counsel and to a refusal to give requested instructions to the jury. The facts are stated in the opinion.

*Kittredge & Prescott, Tuttle, Wyman & Starr, Timothy F. O'Connor,* and *Myer Saidel* (*Messrs. Tuttle, Willard Wight* and *Saidel* orally), for the plaintiffs.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

Peaslee, J. These are suits by the driver of an automobile and his passenger to recover damages for injuries received in a collision between the automobile and the defendant's freight train at Jones' crossing in Milford. The view of the respective actors was largely obstructed by a hill extending alongside the defendant's right of way nearly up to its intersection with the state highway from Milford to Wilton. The defendant had installed an automatic bell to warn

travelers of the approach of trains; but there was evidence that the bell was inefficient for that purpose, and that complaint concerning it had been communicated to the defendant. There was evidence that the statutory crossing warning was not given and that the train was running forty miles an hour.

Romani was driving a car that was somewhat noisy, and approached the crossing at a speed of not over ten miles an hour. As they passed the automatic bell, both he and Cain were giving attention, but heard no sound. When they got within thirty or forty feet of the crossing they looked in the direction of the approaching train, saw nothing, looked in the opposite direction, and then straight ahead across the track, where three highways converged, and over one of which an automobile was approaching. They were about ten feet from the track when they discovered the train. Romani applied the brakes and attempted to turn the car, but it was too late to avoid a collision.

The defendant does not contend that a verdict against it could not be sustained upon such a state of facts, but it claims that as to some of them there was no sufficient evidence, and also that other facts were conclusively shown, whereby it appeared that the defendant's fault was not causal and that the sole cause of the injury was the fault of the plaintiffs.

A careful examination of the evidence leads to the conclusion that there was some credible evidence on each charge of fault on the part of the defendant. Whether it was so overborne or outweighed by conflicting evidence that a verdict based upon it ought to be set aside as against the evidence, is not a matter to be passed upon here.

The defendant's main contention appears to be that measurements and surveys show that the train was in sight for so great a distance that Romani would of necessity have seen it in ample season to stop if he had used reasonable care. It is urged that Romani had the last clear chance to avoid the accident, and that therefore his fault bars not only his recovery but also that of the passenger. *Morier* v. *Hines, ante,* 48.

The claim that if Romani looked he must have seen the train, is based upon certain measurements which are by no means conclusive of the matter. The top of a locomotive smokestack is about twelve feet above the rail. The defendant's engineer testified that from a point in the highway thirty-three feet from the rail a handkerchief displayed at that height could be seen nearly five hundred feet down

the track. He did not testify whether more than the mere top of the smokestack could be so seen, nor at what distance the track was visible, nor where any other portion of the locomotive would come into view. On the other hand, the plaintiffs' engineer testified to observations made when trains were approaching, and that he thought that one must be within thirty feet of the crossing to "see up the track some hundred and twenty-five or thirty feet." In addition to the evidence of these witnesses the jury had a view.

Upon this evidence the jury might find that even though it was true that Romani could have seen the tip of the smokestack if he had deliberately surveyed the entire outline of the intervening hill, still the practical proposition was whether he looked up the track as the average person would look for an approaching train, and so looking saw nothing. *Fuller* v. *Railroad*, 78 N. H. 366.

Much stress is put upon the rule declared in *Cavanaugh* v. *Railroad*, 76 N. H. 68, 72, that "the plaintiff's inability to control the situation is the test." It is argued that since he could have seen the train when he was say twenty feet from the crossing, and could have then stopped before reaching the point of collision, therefore his conduct is the sole cause of his injury. The rule above quoted was stated as applying to the situation of a plaintiff who for some cause is inattentive, to the knowledge of the other actor. It does not mean that in every situation where it is physically possible for a party to prevent an accident he is in fault if he does not do so. The rule of reasonable conduct under all the circumstances applies here as elsewhere.

The case is not determined by an inquiry whether Romani could have seen if he had looked at a certain point. There is the further question whether in failing to so look he could be found to have been in the exercise of due care. Upon the evidence in this case it could be so found. He listened for the bell, and heard nothing; he looked and saw nothing; he then occupied a space of less than two seconds in looking in the other direction, at the highways ahead and at the approaching automobile. It cannot be said as matter of law that such conduct was not that of the average person. The motions for directed verdicts were rightly denied.

The evidence that at the time of the accident the defendant had other and more efficient warning signals in operation at other highway crossings, was admissible. *Speares Sons Co.* v. *Railroad*, 80 N. H. 243.

Requests for instructions to the jury were denied subject to ex-

ception. Several of the requests were for peremptory instructions that there was no evidence to sustain certain specified allegations. These are disposed of by what has been said in relation to the motions for directed verdicts.

Elaborate argument has been presented in support of the defendant's request that the jury be instructed that the first question for them to decide was whether Romani's negligence in driving upon the track was not the cause of the accident. No such limitation upon the power of the presiding justice to arrange his charge in such order or sequence as to him seems proper has been adopted in this state. "The court is entitled to select its own phraseology" (*Tucker* v. *Peaslee*, 36 N. H. 167, 178) and to otherwise arrange the charge in what appears to the presiding justice to be the most appropriate form.

The same rule disposes of the complaint that the requested instruction that the injury must have been shown to have resulted from the breach of a duty owed to the plaintiffs, was given "inconspicuously and quite blindly." The instruction was evidently intended to be in the exact words of the request. It is true that in the transcript of the case the word plaintiff appears once when defendant was meant. If this accurately states what was said, it was the duty of counsel, if they thought the jury might be misled, to call the attention of the presiding justice to the inadvertence. But the mistake was so palpable that it is improbable that anyone misunderstood the meaning intended.

Another position taken is that the statutory rule that the burden of proof upon the issue of contributory negligence is upon the defendant (Laws 1915, *c.* 148) has no application where the defendant claims that its own fault was only an occasion, while that of the plaintiff was the sole legal cause, of the injury. The plaintiff must prove not only the defendant's carelessness, but also that such fault was in part at least the legal cause of the injury complained of. The jury were so instructed. Whether, upon a proper request therefor, the court should also charge that upon the issue of the plaintiff's fault being the sole cause of the accident, under the last clear chance doctrine, the burden was upon the plaintiff to establish his freedom from fault, is a question not presented by the record. There was no request for such an instruction and no exception was taken to those given.

Certain exceptions to the argument of counsel are relied upon. As to these the presiding justice found that they had a possible basis

in the testimony and that they did not render the trial unfair. An examination of the transcript shows that there was such basis in the evidence. *Burnham* v. *Stillings*, 76 N. H. 122, 129, relied upon by the defendant has no application. In that case the finding was based upon an erroneous ruling that certain evidence in the case had been properly admitted. If in the present case the presiding justice had ruled that statements of the evidence were warranted, and the record showed that they were not, the cited authority would be of value. It has no bearing upon the present situation.

*Exceptions overruled.*

SNOW, J., did not sit: the others concurred.