Rockingham,
Sept. 4, 1928.

LENA M. STOCKER *v.* BOSTON & MAINE RAILROAD.

GEORGE F. STOCKER *v.* SAME.

*Jones & Allen* (of Massachusetts), *Charles M. Dale* and *Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the plaintiffs.

*Hughes & Burns* (*Mr. Hughes* orally), for the defendant.

ALLEN, J. It is not a matter of law that the train's speed was inexcessive. While the crossing was private, the defendant maintained it as public. Thus holding it out, it might not say to travelers assuming and relying on it as public that its duties to them were to be otherwise measured. Considering the lack of special protection at the crossing, the usual extent and character of use of the crossing by the public on Sunday afternoons, and such limitations of visible notice of an approaching train as might be found, even assuming the statutory signals by whistle and bell were given, it might reasonably be said that the speed should have been reduced. If ordinarily an accident was not to be looked for under the conditions existing, it is not to be said that there was not enough chance for one traveling prudently to be struck by the train to call for a lower speed. And a very slight reduction of speed would have secured the plaintiff's safe passage of the crossing.

And if the plaintiff's negligence be assumed, the last chance doctrine may serve to overcome its effect. The evidence would justify the following statement of circumstances material thereto. Without stopping her car she approached the crossing at a speed of not over 5 miles an hour. She did not see the train until she was so near the track that she did not then have time to stop short of the

crossing. And the train was then so near that she undertook to increase her speed and go over the crossing ahead of it. This final action of hers was not negligent, unless in manner of performance. When taken, it was her only chance of safety. Her negligence, if assumed, was in her prior inattention and consequent failure seasonably to learn of the train's approach. When the negligence is of such a character, although it may be continuing and logically causal, it is not a bar to recovery under the last chance doctrine. The law now is that if the defendant is aware of the danger and of the plaintiff's ignorance or lack of appreciation of it, his superior knowledge makes him liable if he has by due care the last chance to avoid injury. *Jones* v. *Railroad, ante,* 73, 81, and cases cited.

The defendant's superior knowledge may be found. Its engineer testified that he saw the plaintiff's car stopped on the further side from him of a side track at a distance of some 12 or 15 feet from the main track crossing. But the evidence that the car was not stopped there but was moving all the time in its approach to the crossing warrants a finding that he saw it thus moving. He further testified that when he first saw the car and its occupants, he was at a point which other evidence fixes at about 180 feet from the crossing. While he also testified that the occupants were looking towards him, there was other evidence that they were not. They testified that they did not see the train until the car had crossed the side track and was within a few feet of the main track crossing and this testimony gave the jury the right to say that the engineer saw the car in motion before it reached the side track with no attention given by its driver to the train.

A speed of the train even of from 30 to 35 miles an hour is not so great that a trained observer such as an experienced engineer, with no disturbance of visibility and with no defective vision so far as the evidence shows, might not be found to see correctly the picture presented to him and watched by him of objects within less than 200 feet from him, including the object of a car moving at not over 5 miles an hour. If he could see the occupants of the car looking his way, as he says, he could as well see them looking the other way, as they say. His testimony that he saw them looking his way is evidence that he saw how they were looking, and if in fact they were looking the other way, it may be found that he saw and was aware they were thus looking. And if the car approached the crossing at an unlessened speed of not over 5 miles an hour, the difference between rest and motion at such a rate is so great that it may be

found he saw and knew he saw a moving rather than a stationary car all the time it was in his view. While "Estimates of distance and speed . . . are largely speculative, may be, and often are, unreliable" (*Johnson* v. *Director-General*, 81 N. H. 289, 291, 292), the difference between rest and substantial motion of 7 or 8 feet a second may be found a matter of marked definement to one in the engineer's place.

It follows that a finding that the engineer had, and knew he had, superior knowledge might be made. He failed to apply the brakes until he had gone more than half the distance from his first view of the car, and in going this distance the train took at least 2 seconds. The car was struck after crossing the track at its rear end by the overhang of the locomotive. If the brakes had been applied a small fraction of a second sooner, there would have been no accident. It was for the jury to say if the engineer should have slackened the train's speed more promptly than he did.

The issue of special protection at the crossing was properly submitted. The defendant's acknowledgment that it maintained the crossing as public renders it unnecessary to consider how far if at all a railroad may be under a duty to maintain such protection at a private crossing not held out as public. As already stated, the defendant's duties to travelers over the crossing held out to them as public were the same as though it were in fact public. Without public order therefor, due care might accordingly require such protection to make the crossing suitable. *Huntress* v. *Railroad*, 66 N. H. 185, 191, 192; *Gage* v. *Railroad*, 77 N. H. 289, 290, 291; *Collins* v. *Hustis*, 79 N. H. 446, 449; *Jones* v. *Railroad*, ante, 73, 76. Respecting the claim that the plaintiff's knowledge of the lack of protection barred her right to rely on its requirement, while she might not rely on protection she knew did not exist, she might rely on other protection which would secure her safety. And she might therefore assume protection not given was unnecessary. If it was in fact necessary, it is therefore no answer that she knew it was lacking. While she knew of its absence, she did not know of its need.

A witness was asked if any crossings on the line of railroad on which the accident occurred were equipped with automatic bells. On objection to the question plaintiffs' counsel stated that its purpose was to show the defendant's knowledge of protective devices or methods at crossings which were not used at the crossing where the accident occurred. After defendant's counsel admitted such knowledge, the plaintiffs were allowed to show, subject to exception, that there was an automatic signal at a crossing in Candia a few miles

distant from the Massabesic crossing where the accident occurred, and how the travel over the two crossings compared.

It has been held that evidence of special protection at other crossings than the one under consideration may be received, but this is only to show the railroad's knowledge of such protective methods and devices as it has elsewhere installed. *Speares Sons Co.* v. *Railroad*, 80 N. H. 243, 244; *Romani* v. *Railroad*, 81 N. H. 206, 208. Further consideration would seem to show that such evidence might be excluded, since judicial notice may well be taken of the fact that the railroad has knowledge of such protective methods and devices as flagmen, gates, and automatic signals in the form of gongs, lights and moving arms. It being a matter of common knowledge that the railroad knows about such things, evidence of its knowledge is unnecessary and cannot be rebutted.

But in any event the occasion for the installation and maintenance of special protection at other crossings is not to be made a subject of inquiry. The need of such protection at a given crossing depends upon the special features and facts connected with it. The amount and character of travel, the extent of train movements over it, the operation, control and speed of the trains, the character of the highway in its grade, width and angle of crossing, the distance and clearness of view of the track and highway each side of the crossing in relation to each other, and any other unusual or special features of pertinent bearing, all enter into the problem. In other words, reasonable need of special protection is to be determined by the special and unusual dangers of the crossing considered. It follows that what is needed at one crossing has no relevant bearing on what is needed at another. The details of each situation are too numerous to admit of fair comparison, and it may not be said that because there is special protection at one crossing, there should be at another, even when it appears that the crossings have some special features in common. Even assuming that comparison would have some relevancy of bearing, yet to permit it would mean a frequent if not usual investigation into the special features of the crossing or crossings with which comparison is made, and would result in an impractical and confusing multiplicity of collateral issues tending to defeat rather than aid justice.

While evidence of habit and custom may be received to show the character of conduct in issue and while such evidence may be of conduct on other occasions (*Fuller* v. *Railroad*, 78 N. H. 366, 369, and cases cited), and while experiments and prior accidents may be

introduced in evidence if they tend to prove either a dangerous condition which is an issue or a party's knowledge of the danger (*Saucier* v. *Spinning Mills*, 72 N. H. 292; *Marcotte* v. *Company*, 76 N. H. 507), the character of conduct on a particular occasion may not be received as tending to prove its character on the occasion in issue. In like manner the needs of one situation are not shown by the needs of another.

In the introduction of the evidence about the comparative travel between the Candia and Massabesic crossings there was obviously some purpose other than to show the defendant's knowledge of the protective devices in use at the Candia crossing. Such knowledge had been admitted by the defendant and comparison of travel had no reasonable relevancy to it. No restriction in the use of the evidence was made, and an uninstructed juror would fairly be given to understand from its admission that it was relevant on the issue of what was needed at Massabesic and was of some help in showing the defendant's duty there. And it cannot be held harmless merely because it appeared that the travel at the Candia crossing was greater. There was no evidence of the amount of difference. The crossings were only a few miles apart and were on the same line of railroad. As the evidence stood, the jury might well regard the conditions at Candia to be so much like those at Massabesic as to infer the need of protection there because of the protection at Candia to meet its conditions. The evidence was additionally objectionable because it did not appear whether the protection at Candia was installed in pursuance of or without public order. In the former alternative the requirement to install would not be of due care but would arise as a statutory obligation. The exception to the evidence is sustained.

Of similar incompetence was the use of the statutes relating to special crossing protection in considering what protection of that kind was needed, the court instructing that they might serve to show in connection with the evidence what protection due care required. The fallacy of any claim of relevancy is so clear as hardly to warrant discussion. But it may be pointed out that the statutes only authorize and provide for special protection by public order when the protection is regarded as needed. No order for protection at Massabesic was shown. And a law that protection may be ordered if needed does not help to show that it is needed. The law establishes procedure for determining and meeting the need, but until there is action under the procedure, there is as much if not more reason to say the protec-

tion is not needed as to say it is. A law by which a duty may be established is no evidence that the duty exists. Moreover, as already stated, the duty which may arise under the operation of the statute is to instal protection because of public order therefor, and not because of any order of due care therefor. While violation of a public order may be evidence of negligence, the existence of the order cannot be evidence to show the existence of the duty to be careful, even less can the law under which the order is made be such evidence, and even still less can the law when no order is made be thus argued.

The other exceptions are not considered. While questions argued may be decided if further litigation will thereby probably be avoided, although their decision may not be necessary to dispose of the case (*State* v. *Stevens*, 36 N. H. 59, 61; *Sargent* v. *Little*, 72 N. H. 555, 557; *Knight* v. *Haverhill*, 77 N. H. 487, 489), it must appear that some useful result will follow the decision (*Dame* v. *Laconia Car Works*, 71 N. H. 407, 408), and "it is not the practice to consider difficult questions of law which may not arise when the facts are found." *White Mountain &c. Co.* v. *Murphy*, 78 N. H. 398, 403.

*New trial.*

SNOW, J., was absent: the others concurred.