Cheshire,
Nov. 5, 1935.

JOHN E. DESPRES, *Adm'r v.* BOSTON & MAINE RAILROAD.

*William H. Craig* and *Paul J. Doyle* (*Mr. Doyle* orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Piper* orally), for the defendant.

MARBLE, J.   The decedent left her home in East Jaffrey at 6:40 o'clock on the morning of the accident to carry her daughter and two others to their work at a tack factory.   This factory was situated south of the crossing where the accident occurred.   The train which collided with the decedent's automobile was one of the defendant's regular passenger trains, and consisted of only two cars including the car in which the motive power was installed.   It usually reached the crossing at 6:40, but on that particular morning it was a few minutes late.

The decedent drove over the crossing at 6:50 from the north and remarked at the time that "the train had gone down."   She left her daughter and the other occupants of the car at the tack shop; then, again remarking that "the train had gone by," turned and drove back toward the crossing.   She came "right up on to the crossing without any change in speed" and was there struck by the on-coming train.

The plaintiff contends that the jury were warranted in finding (1) that no train signals were given, (2) that "the special features and facts" connected with the crossing were such as to require the installation of "some sort of a warning device" at that point, and (3) that the speed of the train was excessive.

The defendant's gasoline-electric engine was equipped with a whistle or loud horn and an automatic bell.   Several of the plaintiff's witnesses testified that the whistle was sounded for the crossing and that the bell rang continuously.   There was no testimony to the contrary of a sufficiently positive character to justify a submission of the issue to the jury.   *Morier* v. *Hines*, 81 N. H. 48, 53; *Collette* v. *Railroad*, 83 N. H. 210, 216; *Peppin* v. *Railroad*, 86 N. H. 395, 401; *Smith* v. *Railroad, ante*, 246, 265.

The plaintiff's second contention is equally unavailing.   The highway which extended across the track to the tack shop was not an important thoroughfare but merely a rough dirt road.   For a distance of 20 or 25 feet south of the crossing the view of the track, which intersected the road at approximately a right angle (see *Jones* v. *Railroad*, 83 N. H. 73, 76), was "absolutely unobstructed."   At that

point there were trees and bushes bordering the road, but at the time of the accident they were bare of leaves, and did not hide the track completely. So far as appears, the travel on this particular highway was confined to local workmen who were necessarily familiar with the road, track, crossing, and customary movement of trains. The plaintiff does not claim that railroad traffic over the crossing was extensive.

Reasonable need of special crossing-protection "is to be determined by the special and unusual dangers of the crossing considered," and among the "special features of pertinent bearing" are the "clearness of view of the track," the "amount and character of travel" over the crossing and "the extent of train movements" there. *Stocker* v. *Railroad*, 83 N. H. 401, 405. The application of this test to the evidence before us plainly demonstrates that the dangers connected with the crossing in question were not such as to reasonably require the installation of an automatic warning device or any other special protection.

On the evidence most favorable to the plaintiff the speed of the train did not exceed 30 miles an hour. Considering the location of the crossing, its physical surroundings, and the extent and character of the travel over it, such speed, particularly in view of the evidence relating to the train signals, could not fairly be deemed excessive. The case of *Stocker* v. *Railroad, supra*, on which the plaintiff relies, presents few parallel facts. In that case the accident occurred at a pleasure resort on a Sunday afternoon when "crowds of people" were using the crossing and ordinarily no trains passed over the crossing on Sundays. Unlike the situation in *Stearns* v. *Railroad*, 75 N. H. 40, 44, it does not appear that the speed was in excess of that allowed by the defendant's rules.

There is no evidence that the engineer was trying to make up time unless that fact can be inferred from the testimony of a witness who stated that the train was going 30 miles an hour (an estimate which he later changed to 25 or 30), whereas its usual rate of speed was "about twenty-five." This witness was standing near the track 300 feet east of the crossing and directly facing the train. There is no evidence that the speed of the train was "so great as to render unavailing the warning of its whistle and bell" (see *Huntress* v. *Railroad*, 66 N. H. 185, 187), nor, as already indicated, is there any evidence that such warning was not given. The witness himself stated that he heard the whistle blow and that the bell rang "right up to the crossing." Under such circumstances the fact that the speed may

have been slightly faster than usual is of no significance. *Kilmer* v. *Railway*, 45 Fed. Rep. (2d), 532, 535.

There are no facts which render applicable the plaintiff's argument that a reduction of speed could be found essential because "the train was running later than schedule time." The decedent's belief that the train had passed could not have been known to the defendant, and there is no claim that this belief was based on any circumstance other than the mere fact that it was a few minutes past train time. The trainmen did not testify, and it does not appear that they were aware of the decedent's peril in time to have avoided the accident. "There was no occasion for slackening speed until some danger was apparent. The fact that the train was late is immaterial." *Tucker* v. *Railway*, 122 Mich. 149, 150.

Since there was no evidence from which the jury could reasonably have found that the defendant was negligent, it is unnecessary to consider the contention that the decedent was herself negligent as matter of law.

*Judgment for the defendant.*

All concurred.