Hillsborough, }
Nov. 4, 1936. }

MARY CYR *v*. BOSTON & MAINE RAILROAD.

VENIE CYR *v*. SAME.

*Doyle & Doyle (Mr. Paul J. Doyle* orally), for the plaintiffs.

*Warren, Wilson, McLaughlin & Wiggin (Mr. Wiggin* orally), for the defendant.

WOODBURY, J. The principal highway between Portsmouth on the east and Keene on the west, known as Route 101, crosses the line of the defendant's Portland division at grade in the town of Exeter. The highway at this point is paved with cement, each lane of which is ten feet wide, and the defendant's right of way is double-tracked. This crossing, known as the Main Street crossing, is protected between the hours of 6 A. M. and 11 P. M. by manually operated crossing gates.

As a traveler over the highway from the east approaches this crossing his view down the tracks to his left, that is toward the south, is to some extent obstructed by two buildings; one the gatekeeper's shanty, or cabin, the other a disused fire station.

The gatekeeper's cabin is a small building, about seven feet square and about eight feet high at the eaves; its total height does not appear. It is located twenty-seven feet south of the center of the highway and about fourteen feet east of the nearest rail. The fire station is a two story frame building, twenty-nine feet south of the center line of the highway and about thirty-three feet east of the nearest rail. Between these buildings there is a clear space of about fourteen feet.

The view toward the north is also, although to a less extent, obstructed by a building used as a store.

About eleven-thirty o'clock on the evening of September 28, 1933, the plaintiffs approached this crossing over the highway from the east in an automobile owned and operated by the plaintiff Venie. The plaintiff Mary, who is his wife, sat on the front seat beside him.

As they came toward the crossing, which both had been over several times before but never at so late an hour at night, they noticed the statutory warning signs located beside the highway, and Venie reduced the speed of his car to eight or ten miles per hour. They both testified that they looked to both left and right, and that they listened for the bell or whistle of any locomotive which might be approaching. Seeing and hearing nothing, and seeing the crossing gates up, Venie drove onto the crossing where the front of his car collided with the foremost of two locomotives attached to the front end of a north bound freight. This train was on a regularly scheduled run, it had not stopped at the Exeter station which is located a short distance south of the crossing, and, at the time of the accident, it was traveling about thirty-five miles per hour.

On the above facts it could be found that the defendant was negligent in two respects; first, for failure to provide adequate safeguards for the protection of highway travelers at the time of the accident, and second, for failure of the engine crew to give warning of the approach of the train by sounding the whistle or bell.

"Reasonable need of special crossing-protection 'is to be determined by the special and unusual dangers of the crossing considered', and among the 'special features of pertinent bearing' are the 'clearness of view of the track,' the 'amount and character of travel' over the crossing and 'the extent of train movements' there." *Despres v. Railroad*, 87 N. H. 427, 429, citing *Stocker v. Railroad*, 83 N. H. 401, 405. Applying this test to the evidence in the case before us it is clear that reasonable men might find that due care required more protection at the Main Street crossing than that provided by the defendant between the hours of eleven P. M. and six A. M.

Route 101 is an important thoroughfare, well paved, and subjected to frequent use by the public generally throughout the full twenty-four hours of the day. The defendant's Portland division is the principal railroad line between Boston, Mass., and Portland, Me., it is double-tracked, and was in regular use at Exeter after the gatekeeper went off duty at eleven o'clock at night. Furthermore, a highway traveler's view of the track is not clear and unobstructed but is to a

considerable extent impeded by the buildings above referred to. Under these circumstances it is for the jury to say whether or not the defendant was in the exercise of due care in leaving the crossing gates up and providing no protective signal as a substitute therefor after eleven o'clock in the evening. *Jones* v. *Railroad,* 83 N. H. 73, 75, and cases cited.

The evidence regarding the sounding of the whistle and bell is conflicting. Various members of the train crew testified categorically that the bell of the leading locomotive was ringing as it approached the crossing and that it continued to ring for some time after the accident, and that the usual crossing whistle was sounded from that locomotive, the last blast ceasing as the front of the locomotive entered the crossing. On the other hand both plaintiffs testified that as they approached the crossing they were aware of its proximity, that at least one front window of their car was partly open, that they were attentively listening for the sounds of whistle or bell and that they heard nothing. This evidence of the plaintiffs renders the *scintilla* rule invoked in *Collette* v. *Railroad,* 83 N. H. 210, 216, and cases cited, inapplicable, and it follows that whether or not the whistle and bell were sounded is an issue of fact for the jury. *Morrison* v. *Railroad,* 86 N. H. 176, 181, and cases cited.

The defendant's next argument is that the evidence conclusively establishes that both plaintiffs were guilty of contributory negligence as a matter of law. There is no evidence or claim that the plaintiff Mary was at fault in riding with an unskillful or otherwise unsuitable driver. The argument on this point is based entirely upon the proposition that both plaintiffs, had they been in the exercise of due care, would have seen the train in season to have avoided it. The argument does not require acceptance.

Each plaintiff was required to use for his own safety as much care as the ordinary man of average prudence would have used under the circumstances. The standard by which the conduct of each is to be measured is the same, although, owing to the fact that one plaintiff was the driver of an automobile and the other his passenger, the conduct required of each in order to live up to that standard is different. *Hoen* v. *Haines,* 85 N. H. 36. There being no evidence of any unsuitability on the part of the driver, the precautions in respect to maintaining a look-out which Mary was required to take were much less than those required of her driver. Since the evidence indicates that the behavior of each plaintiff in respect to the look-out which he maintained as they approached the crossing was in all material ways

identical, it follows that if this evidence does not conclusively establish the negligence of the driver, then *a fortiori*, it does not conclusively establish the negligence of the passenger.

The only testimony concerning the plaintiffs' conduct as they approached the crossing is their own. They both testified that they were attentive, that they looked and listened, and that they first saw the locomotive just before the collision when it was too late to stop. This definite evidence that they were giving attention to the situation confronting them does not require rejection under the rule of *Fraser* v. *Railroad*, 84 N. H. 107, because it does not here appear that the train must have been in plain sight had they looked as they said they did. It may have been, in fact part of it must have been, concealed behind one or both of the buildings above referred to.

The fact that the plaintiffs, had they looked south between the fire station and the gatekeeper's cabin, might have been able to see some portion of the train does not conclusively establish their fault. *Jones* v. *Railroad, supra; Romani* v. *Railroad*, 81 N. H. 206. Although both had been over the crossing before, there is nothing to indicate that either was sufficiently familiar with it to realize that an effective view could be had between those buildings and so to charge them with negligence for not availing themselves of it. When passing the point where such a view could be had, they may have been directing their attention to the road ahead, or to the tracks to their right; points from which they had as much reason to expect danger as from their left. The fact that the headlight of the locomotive was on does not conclusively prove that their look to the left was a careless one because it may well have been concealed by the fire station or even by the gatekeeper's shanty, the height of which does not appear, at the moment when they looked in that direction. The further fact that the driver might have stopped but did not do so does not conclusively prove his negligence. *Speares Sons Co.* v. *Railroad*, 80 N. H. 243.

Since the plaintiffs exercised some care for their own safety, and since, having used some care, they may not, because of the unlighted condition of the train itself, the obscurity of the crossing, and their proximity to it when they had a clear view, have seen the locomotive in time to have stopped, it was a question of fact for the jury whether they used as much precaution for their own safety as due care required.

The motions of the defendant to have the verdicts set aside as excessive present an issue of fact for the court below (*Wisutskie* v. *Malouin, ante,* 242), which that court has not yet passed upon. Al-

though we might now consider whether the evidence is such as to compel a finding one way or the other, we are of the opinion that the better procedure is for the court below to pass upon the issues presented by these motions before transferring them to us. Ordinarily this is a court of review on action taken, and no reason for a departure from the usual practice appears in this case.

*Exceptions overruled.*

PAGE, J., took no part in the decision of this case: the others concurred.