Rockingham,
June 1, 1938.

LUCY S. LEAVITT <em>v.</em> LOUIS A. BACON.

JOSEPH E. LEAVITT <em>v.</em> SAME.

WILLIAM J. YOUNG, JR., <em>by his guardian</em>, THOMAS WATKINS

<em>v.</em>

SAME.

*William H. Sleeper* (*George H. Grinnell, Jr.*, orally), for the plaintiffs.

*Hughes & Burns* and *Charles F. Hartnett* (*Mr. Hughes* orally), for the defendant.

PAGE, J. These cases arise out of the collision of two motor vehicles at about ten o'clock in the morning of June 25, 1932, in the intersection of the Lafayette Road and Atlantic Avenue, two public highways in North Hampton. The day was clear, and the road was dry. The two cars involved were Joseph E. Leavitt's, driven by his wife, Lucy S. Leavitt, and the defendant's driven by himself. William J. Young, Jr., Mrs. Leavitt's grandson, fifteen years of age, was a passenger in the Leavitt car and was sitting at her right. Mr. Leavitt was not present. Mrs. Leavitt sued for her personal injuries. Joseph E. Leavitt sought to recover damages to his car, expenses entailed by his wife's injuries, and damages for the loss of *consortium*. Watkins, guardian, claimed damages for personal injuries suffered by Young. All of the damages were alleged to have been caused by the defendant's negligence.

The evidence exhibited the usual conflict. Taking it most favor-

ably for the plaintiffs, the record discloses that the following facts might have been found.

Mrs. Leavitt was driving in an easterly direction on Atlantic Avenue, the defendant northerly on the Lafayette Road. Though there was insufficient evidence that the latter was legally a through way, there were stop-signs planted in Atlantic Avenue on both sides of the Lafayette Road. Mrs. Leavitt, approaching Lafayette Road, came to a stop at the sign on the westerly side, distant about twenty-seven feet from the surfacing of that road, which was twenty feet in width.

After coming to a stop, which she held for an appreciable time, she looked north and south and saw nothing coming in either direction. Her view to the south, whence the defendant was coming, was limited to a distance of about two hundred and thirty feet. Having looked while at the stop-sign and seen nothing, she started up and proceeded at a speed of five miles an hour across the Lafayette Road. From the moment of starting to the moment of collision, she looked neither right nor left, but straight ahead.

When the Leavitt car was in the middle of the crossing, half on the north-bound strip and half on the south-bound, the defendant's car was at least one hundred feet away. The collision happened when the Leavitt car's hind wheels were within three feet of the easterly margin of the surface of the Lafayette Road. The defendant's car collided with the rear wheel of the Leavitt car, and the radiator of the former was damaged. The defendant's evidence was that he was unable to turn into the south-bound lane because of a car approaching from the north, but even if the evidence had not been conflicting upon this point, the jury were not bound to believe the defendant's claim either that he could not with safety turn sharply to the left, or that he actually turned slightly to the left.

The force of the impact swung the rear end of the Leavitt car on a curve about twenty-five feet long, and the car came to rest nearly, if not wholly, off the surface of the Lafayette Road facing south-west, the direction of the car having changed considerably more than ninety degrees. The defendant's car was brought to a stop on the westerly side of the Lafayette Road, somewhere from fifty to a hundred feet from the point of collision.

The defendant admitted that the Leavitt car was always fully within his view from the moment it was standing, before starting to cross the intersection, to the moment when his car hit it. He

could be found negligent because he took no saving action during the elapsed time.

It is common knowledge that for every action there is a compensating reaction; that the inertia of the Leavitt car had to be overcome by a force sufficient to displace it to the extent indicated. There remained in the defendant's car sufficient momentive force to carry it fifty to a hundred feet further, provided the testimony of the defendant were believed that his own motor stalled at the time of the collision. There was the further fact that at five miles per hour the Leavitt car progressed only a little over ten feet, while the defendant's car was proceeding one hundred feet or more. The jury would have been justified in finding that he was driving considerably faster than thirty-five miles an hour (Laws 1927, c. 76, s. 2), or that he was not reasonably watchful, or that he could have turned left and have avoided the accident. They could have concluded that his conduct in one or more of these respects was negligent and causal.

The jury would equally have been warranted in finding that Mrs. Leavitt's negligence had some share in causing the accident. From the stop-sign to the point where she entered the traveled part of the Lafayette Road, she looked neither left nor right. Had she looked as she entered, she would for all practical purposes have had an unlimited view of traffic approaching from the south. She did not look but drove twenty-five feet or more further with her eyes straight ahead. The conclusion would be warranted that her failure to look was a contributing cause of the collision. *Niemi* v. *Railroad*, 87 N. H. 1, 3. There can be no doubt that the verdict in her case establishes the fact of her negligence, and the verdicts in the other cases must establish the fact of the defendant's negligence. There seems to be every reason for sustaining the verdict in her case and no reason why it should be set aside.

Next we may conveniently discuss the suit brought by the guardian. Here the defendant could not be entitled to a nonsuit or a directed verdict. There was sufficient evidence of his own causal negligence, and his motions could not be granted unless (1) the negligence of Mrs. Leavitt was to be imputed to her grandson, or (2) the boy's own negligence appeared conclusively to have contributed to cause his injuries. The former is not urged, but the latter is.

Apparently the question of his care for himself was not submitted to the jury, but the defendant can raise no question here because of that fact. He requested no suitable instructions, and none were

given. The court merely told the jury that Mrs. Leavitt's negligence was not to be imputed to him. After the completion of the instructions there was a colloquy at the bench between the court and counsel. Defendant's counsel, having just been reminded by the court that he should take exception to such portions of the charge as he thought erroneous, suggested the negligence of the boy if he could see and did not. Then followed this:

"*Court:* He wasn't charged with any duty.

"*Mr. Sleeper:* No argument in the claim he was negligent. No statement made in any form."

Defendant's counsel did not deny that this was the first time the question of the boy's negligence had been raised, but did discuss the possibility of contributory negligence. Plaintiff's counsel inquired whether the court had charged the jury that the boy was not negligent. Defendant's counsel answered "No," and there the matter was dropped, without any request for further charge or any exception asked for by the defendant. Counsel for the defendant appears to have acquiesced, for all his expressed doubts, in the situation as it was known to the jury. The law as the jury heard it thus became the law of the trial and the defendant has no exception raising any question of error, even on his motion to set aside the verdict. *Williamson* v. *Company, ante;* 216. Even if this were not so, the evidence of the passenger's negligence was not conclusive.

There remains no question as to the verdict for the passenger's guardian except the defendant's claim that it was excessive. The motion presented a question of fact for the trial court. *Cyr* v. *Railroad,* 88 N. H. 278. The denial of the motion raises no question of law unless it appears clearly and definitely that the jury did not act properly in its consideration of the evidence. *Wisutskie* v. *Malouin,* 88 N. H. 242, 246. The evidence justifies no such conclusion. The boy suffered a blow on the forehead of no special seriousness, arm injuries which were cured in two weeks, and hip injuries which might have been found to be still existent at the time of the trial, two years after the accident. He still walked a little lame, was bothered about climbing stairs, sometimes the hip would catch when he rose from a chair, and sometimes it ached even while he was sitting or lying. Shortly before the trial, his hip-motion was found to be limited twenty degrees in flexion and twenty-five degrees in abduction, with other motions about normal. The condition was arthritic and could be found to have resulted from the accident. No special treatment was known to a medical witness, who declared

that time was the only remedy. It could not be said that the evidence was so clearly preponderant as to indicate that the jury were misled or failed to give intelligent consideration to it, or that they acted improperly. *Wisutskie* v. *Malouin, supra.*

The defendant's motions for nonsuit and directed verdict in the action of Joseph E. Leavitt, it is claimed, raise another question in addition to those raised by the similar motions in the case of Watkins, guardian. Mr. Leavitt had permitted his wife to drive his car on this occasion for use in going to call upon her son. There is no claim that she was driving upon her husband's business or as his agent, or that the enterprise was a joint one of husband and wife. She had the sole management and control of the car. When the Presiding Justice told the jury that Mr. Leavitt was not responsible for her conduct and that her negligence could not be imputed to him, he instructed them properly as far as the husband's control or right to control was concerned. *McCarthy* v. *Souther*, 83 N. H. 29, 36, 37; *Dimock* v. *Lussier*, 86 N. H. 54; *Vidal* v. *Errol*, 86 N. H. 1; *Noel* v. *Lapointe*, 86 N. H. 162.

The defendant now takes the position that the husband cannot, as a matter of law, recover for the loss of *consortium* of his wife when the injuries to the latter are due in part to her own negligence. The point of law has never been settled in this jurisdiction. It was not suggested to the court when the motion was made for a directed verdict, and there was no later request to take from the jury the question of damages for loss of *consortium* or to limit in any way the issues to be submitted in Joseph E. Leavitt's case. The court actually submitted to the jury the question of Mr. Leavitt's damages for the lessening of the value of his car, for his expenses in consequence of his wife's injuries, and for loss of her services.

The defendant neither objected nor excepted to this submission. The verdict must be presumed to cover all three elements of damage. To the charge that Mr. Leavitt was "not responsible for her conduct," that her negligence "could not be imputed . . . to her husband," and that he could recover "regardless of whether Mrs. Leavitt was or was not contributorily negligent" the defendant made no suggestion. In the colloquy at the bench following the charge this portion of the instructions was not even mentioned. The question was not raised by any exception during trial and is not before us. *Bennett* v. *Larose*, 82 N. H. 443.

But there is another reason why the question is not open here. Assuming, without deciding, that the husband could not recover for

loss of *consortium*, he could still go to the jury on the question of the damages to his separate property caused by the concurring negligence of his wife and the defendant. He could recover from either at his election, because he was not himself contributorily negligent and had no control or power of control over his wife's operation of the car. His right to recover from her (*Maryland &c. Company* v. *Lamarre*, 83 N. H. 206) is inconsistent with the view that her fault in damaging his car can be imputed to him because of the marriage relationship. He could not be held liable for her tort unless he participated actively in her wrong or procured it. *Caplan* v. *Caplan*, 83 N. H. 318. It could not be argued successfully that his property right in the automobile was one depending upon his matrimonial status, or that it was derived from some right of his wife's. The defendant was not entitled, on his own present theory, to a nonsuit or a directed verdict in Joseph E. Leavitt's action.

Under the existing circumstances, the defendant has not raised the question of law as to *consortium* by his motion to set aside the verdict. He invokes the case of *McDonald* v. *Elkins*, 88 N. H. 249, but that case is not in point. The jury here did not fall into a plain mistake of law, and the verdicts were not inconsistent in fact. In the *McDonald* case it was clear that the jury found that the wife suffered no injuries; consequently the verdict for the husband could not stand. The position taken that we may construe the verdict against Mrs. Leavitt as indicating a finding that she suffered no injuries is untenable. The clear facts appearing from these verdicts are that (1) applying the law given to them, the jury returned a verdict against Mrs. Leavitt because they found that both she and the defendant were causally negligent, and (2) also in accordance with the instruction that her negligence was not imputable to her husband, they returned a verdict in Mr. Leavitt's favor. The finding made by the Presiding Justice on the motion to set the husband's verdict aside could not have been otherwise, and his denial of the motion raises no question of law. There is no such inconsistency in the verdicts as might be corrected in the manner attempted. *Hewett* v. *Association*, 73 N. H. 556. The jury did not disregard the instructions given them; they followed them faithfully. They did not mistake the law as given them. Whether the law of the trial and the general law were in accord, the jury properly applied that of the trial.

The motion to set aside the verdict in favor of Mr. Leavitt raises no other question different from those considered in connection with

the verdict for Watkins. The ground that it was excessive requires, however, separate consideration. Upon the evidence, the jury were warranted in finding that as a result of the accident, caused in part by the defendant, Mrs. Leavitt had suffered either traumatic neurosis or traumatic labyrinthitis. It might be either, but they did not have to decide which. In such a situation as is here found it could make no difference that medical experts could not tell with assurance whether the one or the other was the conduit through which the chain of causation passed. The trauma received in the accident was sufficient to cause either; either could cause the ailments suffered, and nothing else would; the ailments were suffered only after the accident, not before. One medical witness gave an opinion that if it was labyrinthitis, it was a condition resulting from trauma rather than from some of the other possible causes. Having the evidence thus summarized, the jury were warranted in finding that Mrs. Leavitt's ailments were probably caused in part by defendant's fault, and they must be taken to have made that finding. The admissibility of some of the evidence upon which this finding was based will be discussed later.

The ailments mentioned could be found to have changed Mrs. Leavitt from a sixty-year-old woman in good health to one subject to falling-spells and fainting-spells. Formerly she had been able to do any work in and about the house, like cleaning, papering, scraping ceilings, gardening, any hard work she wished. Afterwards she was able up to the time of trial "to do hardly any work, just little light things like doing dishes, somebody has had to be with her all the time, somebody has had to do all the hard work. If she tried to do any of the hard work she would have a bad spell." We cannot say as a matter of law that there was any error in denying the motion to set aside as excessive a verdict of $1,500 for the husband's loss of his wife's services, his comparatively small expenses for her medical care and the slight damage to his car.

A medical witness testified as to Mrs. Leavitt's difficulty in swallowing: "Well I say I am unable to diagnose that . . . I don't know what it was. All that I can say is what it might be." Upon being then asked in substance whether this accident would be a sufficient cause, the witness replied that almost any blow could cause a neurosis that would interfere with swallowing. To this last question and answer the defendant excepted. The same witness had already testified that the symptoms noted in Mrs. Leavitt might be due either to neurosis or to labyrinthitis, by which we

understand that only those conditions were suggested by the symptoms. He further had said that he could not tell surely which condition existed, because he was not equipped to diagnose labyrinthitis. The question and answer objected to were apparently designed to lay the groundwork for the conclusion that the condition was the probable result of the accident. The examination, as it later developed, covered the ground of labyrinthitis as well as neurosis and tended to show that each could be caused by trauma. The defendant now raises the question whether possibilities may be testified to when probabilities must be found if the jury is to be permitted to find for the plaintiff.

The necessity that the probability finally appear will not in many cases keep possibilities from the jury's knowledge. Nothing is probable which is impossible, and possibilities are the stuff of which probabilities are made. In the course of establishing a chain of causation it is not to be supposed that a party will be always prohibited from showing the possibility of causation. A necessary fact may be shown to be possible, yet the evidence of the possibility must be, stricken from the record when nothing else has appeared to remove the matter from mere speculation and justify a finding of probability. So where an opinion is expressed by an expert that a certain condition may be due to one of two causes, one of which would charge the defendant while the other would free him from liability, and nothing else appears, the jury is left to mere speculation and cannot find the theory imposing liability more probable than the contrary one. In such a case, the evidence must be stricken from the record. *L'Esperance* v. *Sherburne*, 85 N. H. 103; *Emerson* v. *Company*, 87 N. H. 108.

The first distinction of the case at bar from those just cited is that the alternate possibilities presented to the jury were, as already hinted, both consistent with the defendant's liability for damages. The jury were not asked to choose between a theory of causation which would hold the defendant and an equally probable theory which would discharge him. They were asked to believe that it was probable that the defendant's fault caused injuries through one of two equally possible intervening conditions, but the only possible conditions which could give rise to the symptoms noted in the injured person. The adoption of two possible theories of causal connection or medium did not leave the jury to speculate as to the original cause, provided all other theories were eliminated and both theories were connected up with the original cause. If the evidence

boiled down to that, no choice as between the two theories was required.

The question as to the sufficiency of the accident to cause the symptoms under discussion was not improper as a means of erecting the structure of probability. It is true that the case for the plaintiff was left shaky by the first medical witness, who testified, as already stated, that the symptoms must have been due to either traumatic neurosis or to labyrinthitis, but who gave no opinion whether the labyrinthitis, if existent, was caused by trauma or otherwise. But the defendant did not ask that this evidence in its entirety be stricken out on the ground that the result was to leave the jury guessing as between traumatic and non-traumatic labyrinthitis, and after the second medical witness testified, it could not be argued that the jury had to make that guess. The situation thus is much the same as that before us in *Demers* v. *Flack*, 88 N. H. 184, where evidence was held admissible to show that plaintiff's tooth could have been fractured as the result of a collision, it appearing that the tooth was in good condition prior to the collision and that it was fractured after it, also that the only trauma suffered by the plaintiff was in the collision. We think that in the absence of any evidence of another blow, the jury was not guessing when it found a connection between the blow proved and the ensuing disability.

The first medical witness stated, subject to the defendant's exception, that he did not think that a fracture of the sixth vertebra would cause trouble to the mastoid and result in the symptoms found. The evidence was material and admissible as tending to eliminate one theory as a possibility and leaving only others for consideration.

The second medical witness testified without objection or exception that in his opinion Mrs. Leavitt's dizzy spells and fainting spells were due either to neurosis or to labyrinthitis—traumatic in either case; that even a slight blow might cause a neurosis, while more force would be required to produce labyrinthitis. This testimony, in practice conceded to be admissible, stated in effect the opinion of probability that one or the other condition existed, and went further in asserting that the probability was not rebutted by the fact that the blow was not severe.

After this was admitted, the plaintiff's counsel put a hypothetical question assuming the accident in question and asking the witness, "would you expect that in [*sic*] such a collision be a sufficient cause for either of these conditions . . . . ?" The answer was "That might cause it," upon which the following colloquy took place:

"*Mr. Hughes:* We ask that be stricken out, if the Court please. *Court:* All right I guess. Might cause. *Witness:* Well I should say it could cause it if that would help any. *Mr. Hughes:* Object to that. *Court:* May remain. *Mr. Hughes:* May we have exception? *Court:* All right."

Here again we have a statement as to the sufficiency of the blow to cause the results observed. The opinion of probability had been given, and this was no more than the familiar statement that the condition described was consistent with the force exerted by the alleged cause, that the blow received in this accident was of sufficient force to cause even labyrinthitis. None of the rulings on evidence was error. There were other objections to evidence, upon none of which the defendant procured a ruling. Consequently none of them has been considered.

The defendant interrupted the plaintiffs' argument with exception which left one sentence of the argument unfinished. The statement regarded the plaintiffs' claim that because of obstructions to the defendant's view, P. L. c. 103, s. 18 required him to approach the intersection at fifteen miles per hour. The sentence, up to the point where it was interrupted, stated the law fairly. What would have followed but for the interruption, cannot be known. The plaintiffs' counsel understood the objection to go to the manner of stating the law and not to its application to this case. The defendant's counsel did nothing to correct this misunderstanding, if it was a misunderstanding, or to get a ruling by the court as to the applicability of the statute. After the statute had been given to the jury by the court's instructions, the defendant discussed with the court the propriety of so doing. The court said, "You take your exception to whatever you don't think proper." The defendant's counsel replied "Yes," but claimed no exception. The question of law appears not to be before us.

The defendant excepted to argument that it would take three and one-third seconds for Mrs. Leavitt to go from a certain point to the point where her husband's car was struck. The argument was supported by the evidence and understated the time by about a third of a second. We can see no validity to the defendant's repeated insistence that the plaintiff should have adopted for argument a shorter distance of travel and a shorter time. It was proper to argue that over three seconds elapsed from the time Mrs. Leavitt began to cross the surfacing of the Lafayette Road to the moment of

collision.  During all that time she was in the direct view of the defendant.

The counsel for the plaintiffs said in argument: "He [Dr. Jones] says I don't care what Dr. Chesley may say, my opinion is that that woman had a fracture in the extension, in the outer part of the sixth vertebra and that's what she had there and she had this head injury and she has got either the one or another form in his opinion as near as he can tell, whatever you call it, doesn't make any difference, she has got the head injury."  The defendant excepted on the ground that this was a misstatement of Dr. Jones' opinion.  The argument was amply supported by the evidence.

*Judgments on the verdicts.*

All concurred.