Strafford, }
Dec. 6, 1927. }

ROBERT DOE, *Adm'r c.t.a.* (DWIGHT HALL, *Adm'r d.b.n.*) *v.* ANNA M. LUCY.

*George T. Hughes* and *Stanley M. Burns* (*Mr. Burns* orally), for the plaintiff.

*Horace Guild* and *John M. Merriam* (both of Massachusetts) and *Conrad E. Snow* (*Mr. Snow* orally), for the defendant.

BRANCH, J. 1. It appeared at the trial that in 1910 three actions for rent were brought against the defendant on behalf of Isaac Weil, the lessor, by one J. Butler Studley, an attorney. In these suits one Samuel W. Forrest, an attorney, entered his appearance for the defendant. The plaintiff offered in evidence Mr. Studley's deposition in which he testified that Mr. Weil told him that Mr. Forrest brought the keys of the leased premises to his (Weil's) store and stated that he returned them on behalf of the defendant, but that he (Weil) refused to accept them. To the introduction of this testimony the defendant objected, and the ruling of the court was that it be "omitted for the time being without prejudice to your rights to offer it if you ever make it competent." To this ruling the plaintiff excepted. No further offer of this testimony was made by the plaintiff. It is unnecessary to decide whether, under these circumstances, the question of the admissibility of the testimony was squarely raised, for it is plain that the plaintiff's rights would not have been prejudiced if it had been unconditionally

excluded. The offered evidence was pure hearsay and inadmissible for any purpose.

2. Subject to the plaintiff's exception, the court admitted the testimony of the defendant to the effect that the widow of the deceased, who acted for two years as the executrix of his will previous to the appointment of the plaintiff as administrator, never made any demand upon her for the payment of money. The ground of the plaintiff's objection was that the present administrator, *c.t.a.* is not bound "by either a statement of a former executor or her silence as [an] admission on this claim." It is not necessary to decide in this case how far, if at all, a subsequent administrator is bound by the admissions of his predecessors in office, for no attempt was made to bind the plaintiff by any admission of the executrix: The testimony in question belonged to that class of evidence which is persuasive rather than probative in its effect, having a possible tendency to discredit the opposing party's case as a whole. *Login* v. *Waisman*, 82 N. H. 500, 502; *Masterson* v. *Railway, post*, 190. For this purpose it was admissible.

3. Inasmuch as the plaintiff administrator did not elect to testify, the defendant was prevented by the statute (P. L., c. 336, s. 27) from testifying to facts occurring in the lifetime of the deceased to which he might have testified if living. She produced, however, an account book which she testified had been kept by her and was "the record book of transactions of the house, in receipts from the rooms and the money, disposition of the money received." This book was admitted in evidence and the plaintiff excepted. Eleven specific entries of payments to "C. E. H." were then called to the attention of the court, aggregating $1618.33. The smallest of these payments was $25. To the admission of these items, plaintiff also excepted.

The court based its rulings admitting the foregoing evidence upon the exception to the hearsay rule which has been established in favor of parties account books. III Wig., Ev., ss. 1536–1561. "Generally a party could not testify at common law, but he could give in evidence his books of account supported by his suppletory oath." *Snell* v. *Parsons*, 59 N. H. 521; *Eastman* v. *Moulton*, 3 N. H. 156. This right was not affected by the passage of the statute above referred to limiting the right of a party to testify when the opposing party is an administrator. *Snell* v. *Parsons, supra*. In this jurisdiction, however, the above rule has always been subject to the limitation that payments of money in excess of $6.67 could not be proved by account books. *Bassett* v. *Spofford*, 11 N. H. 167; *Rich* v. *Eldredge*, 42 N. H.

153, 158; *Bailey* v. *Harvey*, 60 N. H. 152, 154; *Remick* v. *Rumery*, 69 N. H. 601, 604. The defendant concedes that by force of this limitation, the entries above referred to were inadmissible to prove payment to the deceased of the amounts therein mentioned, but argues that in this case "no effort is made to charge the decedent with these or any amounts" and that upon another issue in the case, "to wit, did the defendant turn over rent money to the decedent?" the account in question was admissible. This position is untenable, for it is well settled law that under the above rule, account books are admissible only upon the issue of debit or credit between the parties and not upon collateral questions. *Lassonne* v. *Railroad*, 66 N. H. 345, 352; *Bailey* v. *Harvey, supra; Leighton* v. *Sargent*, 31 N. H. 119, 135; *Batchelder* v. *Sanborn*, 22 N. H. 325; *Woods* v. *Allen*, 18 N. H. 28, 33; *Little* v. *Wyatt*, 14 N. H. 23; *Woodes* v. *Dennett*, 12 N. H. 510. It follows that the entries purporting to record payments to the decedent were improperly admitted.

This conclusion makes it unnecessary to decide whether it is still the law that money payments in excess of $6.67 cannot be proved by account books.

The account book in question was not offered or used, however, for the sole purpose of evidencing the payments above referred to. The whole book, with the exception of the first five pages which dealt with other matters, was offered in evidence by the defendant for the avowed purpose of "showing the financial relationship between the two with reference to the premises in question," and was evidently considered by the court for this purpose, for in the findings of fact, after a statement that the testimony of certain witnesses alone would convince the court of the truth of the defendant's contention, we read as follows: "When coupled with the defendant's book of account of her stewardship, the conclusion becomes irresistible." This use of the book was improper. The law does not permit a party, otherwise debarred from testifying, to get before the court through the medium of an account book kept by himself, his version of "the financial relationship" between him and another, or an account of his "stewardship" for another, when the existence of the stewardship itself is the vital point at issue. Such a result would be contrary to the spirit of the statute above referred to, and the account book principle, when its limitations are clearly understood, does not permit it. "The charges being made by the party, the books are received with great caution and subject to many limitations. They have been refused admission to prove the consideration of a promissory note; the delivery of goods

to a third person; the delivery of goods in performance of a special contract; to prove to whom credit was given, delivery being admitted; or any matter collateral to the issue of debt and credit between the parties." *Bailey* v. *Harvey, supra.* Plaintiff's exception to the admission of the defendant's account book must, therefore, be sustained.

The defendant argues that in view of the court's finding that the evidence of certain witnesses alone would convince him that the transaction was such as the defendant alleged it to be "the admission of the defendant's account" if error, "was clearly harmless error" which should not result in setting aside the verdict. This contention cannot be adopted. "An attempt to analyze the process by which the verdict was reached, and to ascertain the effect which every portion of the evidence had in producing it, will generally prove unsatisfactory." *Mason* v. *Knox,* 66 N. H. 545, 547. The general rule that the admission of incompetent evidence upon a material issue in a trial before any judicial tribunal vitiates the result, must be applied here.

4. In her efforts to get before the court her version of her dealings with the deceased, the defendant did not stop with her account book, but offered in evidence her diary covering a period from July 11, 1908, to December 31, 1909. Objection having been made by the plaintiff, the court made the following ruling: "Received as I have received the bulk of the other evidence, — *de bene.*"

The use of the phrase *de bene esse* or its contraction, *de bene,* in connection with rulings upon evidence is of very doubtful utility. The literal translation from the Latin being somewhat obscure (see III Cent. Dict. 1477; 3 Oxford Eng. Dict. 54), it lends itself readily to loose usage and tends to become a mere catch word. Although authority for many varying and inconsistent meanings is to be found in the dictionaries, the phrase, as used in the law of evidence, properly has reference to the doctrine of "conditional relevancy" (4 Wig., Ev. (2d *ed.*), *s.* 1871; 1 Chamb. Ev., *ss.* 375, 376), and its appropriate significance is most accurately expressed by the word "conditionally." So when testimony is properly offered or received *de bene esse,* it is upon the assumption that its admissibility has not at the time been demonstrated and that it depends upon proof of facts not yet in evidence. In such a situation the testimony is offered, and may be received, upon condition that the necessary capacitating facts shall subsequently be made to appear. A ruling which thus admits evidence conditionally exemplifies the true meaning of the phrase *de bene esse.* This is clearly the sense in which it was used in the following passage

from *Soucier* v. *Company*, 77 N. H. 118: "The practice in such cases is well settled. The court may rule upon the admissibility of the evidence as the case stands when the evidence is offered, or the ruling may be based upon the offer of proof, *de bene esse*, or it may be postponed until the other evidence has been introduced." This was not the situation in the present case. There is no suggestion in the record that the defendant expected subsequently to prove any fact which would affect the admissibility of the diary and no such condition was attached to its admission by the court. If it was not admissible when it was offered there was no reason for believing that subsequent developments in the course of the trial would improve its status. By attaching to his ruling the qualifying phrase, *de bene*, the court, in effect, deferred ruling upon it until he should have time to consider the question of its admissibility more carefully, and the plaintiff appears to have acquiesced in this method of procedure.

The defendant then read and offered in evidence no less than forty-six excerpts from the diary dealing with the activities of the deceased in regard to the leased premises. To each of these items the plaintiff objected, and the ruling of the court was, in every instance, that the offered evidence be excluded *de bene*. Here again the phrase *de bene* was used in the sense of "provisionally" or "tentatively" and not at all in the sense of "conditionally." At the close of the evidence, counsel for the plaintiff inquired as to the status of the extracts from the diary and the court then made the following statement: "I said the ruling excluding all of them may be a *de bene* ruling. I may find upon looking them over that there may be something that is competent. . . . If I admit any of it I will indicate so that you can have a chance to have a further hearing if you need to." It thus appears that plaintiff's counsel exercised due diligence in attempting to prevent the consideration of the diary as evidence by the court and to protect the plaintiff's rights in case it should be considered. The findings of the court do not state specifically that any parts of the diary were finally admitted and considered, but from the facts reported it is plain that they must have been. The court found that "the decedent furnished much of the furnishings of the house," and this finding receives no substantial support from any of the evidence except the extracts from the diary. The most that could be found from the testimony of the witnesses was that the deceased furnished "some (number not given) old chairs . . . called Jeff Davis chairs," a card table and two art squares. Obviously this evidence would not justify a finding that the decedent furnished "much of the furnishings," of a

twelve room house. The diary, however, contains a number of references to furniture and other household goods supplied by the deceased and the conclusion seems irresistible that the court must have based the above finding upon the recitals of the diary. This amounted to a reversal of the ruling excluding the offered extracts and a final ruling admitting them. To this ruling the plaintiff is clearly entitled to an exception, and the exception must be sustained, since the contents of the diary were plainly hearsay, and inadmissible for any purpose.

It was wholly unnecessary for the court to listen to the contents of the diary in order to pass upon its admissibility. When the book was produced it was described by the defendant as "a daily memoranda of the doings of the day that I wanted to make a record of." The book thus described was offered as "independent evidence, wholly apart from testimony of the defendant." This was plainly an offer of hearsay testimony, and the book might well have been excluded *in toto* at that point. Later, before the extracts from it were read, counsel for the defendant made the following statement: "We might say here, we shall offer these portions of this book as an account of the entire relationship between the parties with reference to this property, and of the entire activity of Mr. Hoitt in connection with it." This statement again indicated clearly that the defendant was offering her own hearsay narrative of past events and the inadmissibility of the offered evidence was so plain that the court should have refused to listen to the extracts at all.

The foregoing discussion indicates the danger involved in the practice of making provisional rulings upon items of evidence, especially when applied throughout a trial, to a very large number of contested questions as in the present case. Although the law assumes that a fact finding tribunal may, by conscious effort, rid its individual or collective mind of the impression produced by a piece of evidence improperly admitted (*Mason* v. *Knox, supra; Burnham* v. *Butler*, 58 N. H. 568; *Judge of Probate* v. *Stone*, 44 N. H. 593, 607), it is obvious that there must be a somewhat close limit to the burden which can thus be placed upon the selective faculty of the trier and if a sufficiently large quantity of logically convincing but inadmissible evidence is placed before a tribunal under provisional rulings, the possibility of erasing its impression by a final ruling may vanish and a mistrial will necessarily result. In the present case the absence of other evidence to sustain the finding of the court leads to the conclusion that the impression made upon his mind by the extracts from

the diary persisted and that they were in part the basis of his decision. A general practice of ruling provisionally upon large masses of evidence subject to a final ruling at the end of the case or when the decision is made, is not approved.

*New trial.*

SNOW, J., did not sit: the others concurred.