Merrimack,
Oct. 1, 1946. } No. 3591.

NAPOLEON DENNIS, *Adm'r of the estate of* NAPOLEON DENNIS, JR.

*v.*

BOSTON & MAINE RAILROAD.

ELMER ELLSWORTH *v.* SAME.

*Murchie & Murchie* and *Willoughby A. Colby* (*Mr. Alexander Murchie* orally), for the plaintiffs.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant.

BRANCH, J. There was abundant evidence of the defendant's negligence, and the entire emphasis of the defendant's argument was directed to the contention that the plaintiff was guilty of contributory negligence. The case has, therefore, been considered solely with reference to this question.

By Laws 1915, *c.* 148, the burden of proving contributory negligence in cases of personal injury is imposed upon the defendant. "Under the present law no evidence as to the care of the deceased is necessary as a part of a plaintiff's case, and when his conduct is disclosed by the evidence a verdict can be directed for the defendant only when it conclusively appears that he was at fault, as in *Collins* v. *Hustis, supra* [79 N. H. 446]. If his conduct admits of any reasonable and nonculpable explanation, the question of his due care is for the jury." *Jones* v. *Railroad*, 83 N. H. 73, 78. In a case where the evidence does not disclose the actual conduct of a decedent at the time of the accident, a nonsuit can be entered only if the circumstances of the accident conclusively negative the possibility that the decedent exercised any care for his own safety. If it may be found that he exercised some care the question whether it was due care is for the jury. *Cyr* v. *Railroad*, 88 N. H. 278, 282. In the present case there were no eye witnesses to the actual collision and no one knows exactly what the deceased driver did immediately before it occurred, hence it cannot be said that "it conclusively appears that he was at fault."

Only three witnesses gave testimony which could be regarded as bearing upon the conduct of the deceased at the time of the collision. One of these witnesses was William Foster who testified that he lived within four hundred feet of the crossing and that the truck, driven

by the decedent at a speed of twenty-five miles per hour, passed his house immediately before the accident and that he waved his hand to the deceased. He testified that after the truck passed, he opened the door and walked into the kitchen of the house when he heard the whistle of the train. Within ten or twelve seconds thereafter he heard the crash of the collision. The testimony of this witness tended strongly to support the contention of the defendant that the decedent drove onto the crossing at a speed of twenty-five miles per hour without slowing down. The jury were not bound, however, to accept the estimates of time and distance given by the witness, and it cannot, therefore, be said, as a matter of law, that this testimony conclusively established the defendant's contention.

Elmer S. Ellsworth, the owner of the truck, testified that he had often driven with the decedent and observed his manner of driving in passing over railroad crossings, and continued as follows: "Q. Will you tell the jury what if any habit he had in his conduct going across crossings? A. He stopped and looked before he went on." Napoleon Dennis, the decedent's father testified as follows: "Q. Did you ever ride with him when he went across railroad crossings? A. I have many times. Q. How did he conduct himself when he approached railroad crossings when you were with him? A. He would slow down and it looked to me as if he were looking and listening." The happening of the accident disproves any contention that the decedent stopped before going upon the crossing. From the testimony of his father, however, it might be found that he slowed down, looked and listened. *Carbone* v. *Railroad*, 89 N. H. 12, 16.

The evidence does not compel the conclusion that the decedent knew that this particular train had been running late. It was, in fact, twenty minutes late on the afternoon of the accident, and the deceased might be found to have believed that it had already passed. Such belief on his part would have an important bearing on the question of his due care. *Minot* v. *Railroad*, 73 N. H. 317, 320; *Bourassa* v. *Railroad*, 75 N. H. 359, 360; *Peppin* v. *Railroad*, 86 N. H. 395, 399. There is no evidence that he knew or ought to have known that the train in question would run by the Penacook station at the extreme speed of sixty miles per hour.

If he had looked at a point eighty feet from the westerly rail, which appears to have been the first point at which he could obtain a useful view down the track, the train may not have been, and probably was not, in sight, since only sixty-nine feet of rail was visible from that point. If he then proceeded fifty feet toward the track before looking

again, which would not be unreasonable, he must then have seen the train approaching at a very high rate of speed not more than one hundred and twenty feet from the crossing. In such a situation, upon any reasonable assumption as to the speed of the truck, he would have only about a second in which to take protective action. Upon seeing the train thus approaching, he may well have become panic stricken and attempted to cross the railroad in front of the train. Such conduct would not be improbable nor would it constitute negligence. *Folsom* v. *Railroad*, 68 N. H. 454, 460. "A more or less instinctive effort to cross the track ahead of the train may have been a chance which care would not condemn." *Morrison* v. *Railroad*, 86 N. H. 176, 179.

It was not incumbent upon the plaintiff to prove that any of these suppositions were in fact true, or that the decedent acted in any particular manner. The burden was upon the defendant to prove that he acted negligently. The evidence does not compel a finding to that effect. *Jones* v. *Railroad*, 83 N. H. 73; *Morrison* v. *Railroad*, *supra*; *Carbone* v. *Railroad*, 89 N. H. 12; *Whipple* v. *Railroad*, 90 N. H. 261.

*New trial.*

BURQUE, J., dissented; the others concurred.