Grafton,
Nov. 1, 1949. } No. 3841.

LOUISE T. MANSEAU, *Adm'x v.* BOSTON & MAINE RAILROAD.

*Dodge & Moulton (Mr. Moulton* orally), for the plaintiff.

*Hinkley & Hinkley (Mr. Walter D. Hinkley* orally), for the defendant.

BLANDIN, J. The basic claims of the defendant are that there was no evidence to submit to the jury, first, that the train struck the wagon; second, that the speed of the train was improper or that it or any other negligence of the railroad was causal; and finally, that the plaintiff's contributory negligence was established as a matter of law.

The first two contentions require no extended consideration. The

position of Tibbett's body, of the wagon spokes and meal, the absence of any hoof prints or marks between the crossing and the decedent's body together with other findable circumstances warranted, if they did not compel, the jury's conclusion that the engine hit the buckboard. So, too, the ignorance of the train crew of the presence of the large white horse or driver and of the accident itself justified the jury's finding a proper lookout was not kept.

The jury could find on the evidence that the buckboard was nearly across the track when struck. Upon that assumption a calculation will show that when the horse's head was only twelve feet from the nearest rail the driver and the rear end of the buckboard would be respectively about twenty-one and twenty-four feet away. At that time the train would be some two hundred eighty feet distant. There was evidence that the brakes and sand could be applied almost instantly and that this would begin reducing the speed of the train "immediately." It was for the jury to say whether due care on the part of the train crew would have revealed the danger of a collision and whether a prompt application of brakes and sand would have retarded the train the fraction of a second necessary for the wagon to clear. *Peppin* v. *Railroad*, 88 N. H. 145, 149; *Stocker* v. *Railroad*, 83 N. H. 401, 404. See also, *Shimkus* v. *Caesar*, 95 N. H. 286, 288. It may therefore be found that failure to keep a proper lookout was both negligent and causal and the defendant's exception to the submission of this issue fails.

As to the issue of speed, it must be said that the question whether a rate of thirty miles per hour over the crossing was reasonable or otherwise was not submitted to the jury in the abstract. They were asked to determine whether this speed was reasonable under the circumstances as they existed, "at that time [the time of the accident] that night." In addition to the blindness of the crossing another circumstance which the jury was entitled to find as previously stated was that the railroad did not keep a proper lookout. The night was clear and the headlight was on bright. These and other facts would plainly warrant such a conclusion. Whether it was negligent to run at thirty miles per hour over this crossing with no one on the train watching for travellers who might be using the crossing was a jury question. In *Ware* v. *Railroad*, 92 N. H. 373, 375, although the facts were dissimilar the following language seems pertinent: "Even though the train usually traveled over the crossing at that speed, and that it might readily be said such speed was reasonable and not excessive under ordinary circumstances, conditions prevailing at the

time of the accident were out of the ordinary." In the case before us the extraordinary conditions which the jury could find were that Tibbett's view was limited and that the defendant kept no lookout such as its own rules and custom or due care required.

The undisputed fact that the horse was unscathed and evidence that the impact was on the right rear wheel of the buckboard warranted a finding that a slight decrease in the train's speed as it approached the crossing would have enabled the deceased to pass safely, and therefore that the speed was causal. It was not a matter on this particular issue, as the defendant argues, whether the crew could have discovered Tibbett's presence in time to have stopped or slowed up enough to have avoided the accident. It was the jury's right here to say that if the train was to run with no lookout sufficient to discover the team, under the circumstances that night, the speed should have been reduced as it neared and passed over the crossing. It is obvious that had this been done a finding that there would have been no accident is sustainable and the Court's charge on this issue was therefore correct. See *Panagoulis* v. *Company*, 95 N. H. 524, and cases cited.

Whether the question of the decedent's due care should have been submitted to the jury depends on whether "The circumstances of the accident conclusively negative the possibility that he exercised any care for his own safety." *Dennis* v. *Railroad*, 94 N. H. 164, 165. The burden is not on the plaintiff to show that the deceased exercised due care but on the defendant to prove that he did not. *Dennis* v. *Railroad, supra; Lovett* v. *Railway*, 85 N. H. 345.

The jury saw the place and it was for them to say whether the deceased was negligent that night in not seeing the headlight of the freight or appreciating what it was if he did see it. No one saw what Tibbetts did after he drove away from the house. His comparative unfamiliarity with the crossing, the obstruction to his sight and hearing, the nearby state road parallel to the tracks and upon which as a matter of common knowledge automobile lights might be expected to pass and repass, all might be found to tend to confuse him and delay his awareness of the approach of the train until too late for him to take saving action. The evidence did not establish contributory negligence as a matter of law.

It could well be that the deceased did not realize in the darkness how far he could see up and down the track. Assuming the horse travelling at three miles per hour, Tibbetts, according to his custom, glanced from his seat up the track when he was about twenty-five

feet from the nearest rail. At that time a calculation would show that the train, going ten times as fast as the team, was out of his sight, though he could see between one hundred fifty-two and two hundred thirty-seven feet easterly. He then could have looked down the track. Allowing a reasonable time for these acts, with the horse moving forward about four and one half feet per second, if the deceased again looked to his right, or otherwise, became aware of the engine's approach within as short a time as four or five seconds the horse would be on the crossing. The train bearing down at thirty miles per hour, or at about forty-five feet per second, from about one hundred feet away, would be on him in about two seconds. "Upon seeing the train thus approaching he may well have become panic stricken and attempted to cross . . . in front of the train. Such conduct would not be improbable nor would it constitute negligence. *Folsom* v. *Railroad*, 68 N. H. 454, 460 . . . *Morrison* v. *Railroad*, 86 N. H. 176, 179." Again, the horse alarmed by the train of its own volition may have started on, for it did cross safely, before the decedent could stop it. Considering all the circumstances including evidence of Tibbett's customary care, it seems the defendant's claim fails to meet the test of "conclusively" disproving "the possibility" that he exercised "any care" for his own safety. As stated in *Dennis* v. *Railroad*, 94 N. H. 164, 167: "It was not incumbent upon the plaintiff to prove that any of these suppositions were in fact true, or that the decedent acted in any particular manner. The burden was upon the defendant to prove that he acted negligently. The evidence does not compel a finding to that effect." The above principle is applicable here and the defendant's contention therefore fails. There being evidence for the jury of the defendant's negligence and the decedent's negligence not being established as a matter of law the defendant's exception to the submission of these issues and to the denial of his motions for a nonsuit, a directed verdict and for judgment notwithstanding the verdict are overruled.

We turn now to the defendant's exceptions to the admission of evidence regarding the view and of certain expert testimony. While the evidence as to the view referred back some years and related to daytime conditions, this bore on the question of remoteness and weight. That the matter of remoteness is within the discretion of the Trial Court and the weight of testimony is for the jury are principles too well established to require citation. As to the expert's testimony no reason appears to disturb the Court's ruling in finding him qualified. *Ricker* v. *Mathews*, 94 N. H. 313; *Brunel* v. *Association*, 95 N. H.

391, 395, and cases cited. True the testimony was conflicting and confused at times but this was for the jury to resolve. "Only in clear cases of error may it be said as a matter of law that testimony is entirely unworthy of belief." *Romano* v. *Company*, 95 N. H. 404, 407. No error is seen in the rulings of the Court and these exceptions are overruled.

The defendant's claim that portions of the argument of the plaintiff's counsel were improper and prejudicial does not bear analysis. The argument was in effect that the team "was already going over the crossing when the train was coming down through that cut." Counsel upon objection said "I argue that as a fair inference from the evidence," and the Court told the jury to take their own recollection of the testimony. It is hard to see how the jury could have been mislead considering the view, the evidence and the Court's instructions. However, the cut extends practically to the crossing and it was a fair inference that when the head of the horse was over the nearest rail the train was in the cut. It appears the defendant takes nothing by this exception.

Lastly, the defendant excepts to the Court's refusal to give certain instructions. The first is in substance, that the engineer has the right to assume due care on the part of the traveller so that if a train is approaching he (the traveller) can stop in time to avoid a collision. The second, summarized, is that a traveller must take reasonable precautions to learn of the approach of the train and failure to do so bars recovery. The Court charged that each party must "exercise reasonable care" in using the crossing, that each was entitled to assume the other would do likewise and further that neither would be negligent for failure "to anticipate illegal conduct" on the part of the other in the absence of circumstances to put him on guard. He also charged that if Tibbetts were negligent there could be no recovery. The Court was not compelled to use the language of these requests and having charged the principles involved the defendant's exceptions are unavailing. *Dane* v. *MacGregor*, 94 N. H. 294; *Smith* v. *Railroad*, 88 N. H. 430, 435.

The remaining exceptions to the denial of the requests deal with matters already covered by this opinion or are to the Court's refusal to instruct upon selected portions of the evidence. *Dane* v. *MacGregor, supra,* 298, 299. They are therefore overruled and the order is

*Judgment on the verdict.*

All concurred.