[Civ. No. 703.   Fifth Dist.   May 5, 1967.]

ROBERT L. MEADOWS et al., Plaintiffs and Appellants, v. BAKERSFIELD SAVINGS & LOAN ASSN., Defendants and Respondent.

Robert L. Meadows, in pro. per., for Plaintiffs and Appellants.

Deadrich, Bates & Lund and Kenneth H. Bates for Defendant and Respondent.

STONE, J.—Plaintiffs appeal from a judgment of nonsuit in their action for damages predicated on the theory of abuse of process.

Defendant Bakersfield Savings & Loan Association financed the purchase of a residence for plaintiffs, who, in turn, executed a promissory note for the principal sum of $20,200 with interest at the rate of 6.6 percent per annum, payable in monthly installments on account of principal and interest in the sum of $138. The note provided for a late-payment penalty equal to 10 percent of any installment not paid within 15 days of its due date. Plaintiffs also signed an agreement to pay all the taxes and assessments affecting the real property, and to pay fire insurance premiums, taxes and insurance premiums to be prorated monthly and impounded by defendant in a reserve account from which future taxes and insurance premiums were to be paid. To the monthly installment of $138 for principal and interest, defendant added an estimated $28 for prorate of taxes and $4 for fire insurance, or a total of $170 commencing June 1, 1962.

Defendant advised plaintiffs May 16, 1963, that because of an increase in Kern County real property taxes it was necessary to increase the monthly payment for tax reserve, so that their total monthly payment was increased from $170 to $194. Plaintiffs were also advised that the 10 percent delinquency rate would be $19.40 after June 1, 1963.

In November 1963 plaintiffs sent their monthly check for $194 more than 15 days after it was due, and the association returned the check with a notice of a 10 percent late charge of $19.40, making the amount due $213.40.

A dispute arose, plaintiffs contending the late penalty payment provided in the promissory note was expressly limited to 10 percent of the monthly installment of $138 on principal and interest, and that defendant had no right to charge the penalty on the reserve payments for taxes and fire insurance premiums. In the course of the controversy, plaintiffs discov-

ered that defendant had prorated taxes on an 11-month basis instead of in 12 equal payments. They demanded that the prorated portion of their monthly payment be restored to the original $28 per month. Plaintiffs made no more payments. Several conferences were had between them and various representatives of defendant, but without success, and on January 29, 1964, defendant caused a ''Notice of Default and Election to Sell Under Deed of Trust'' to be recorded in Kern County, and a copy to be served upon each of the plaintiffs.

Shortly before the time fixed for sale, plaintiffs sought relief by way of a complaint stating a first cause of action for declaratory relief, and a second cause of action for damages. They obtained a temporary restraining order preventing defendant from proceeding with the sale under the deed of trust.

A bifurcated trial was ordered; the declaratory relief action was set for trial by the court, to be followed by a jury trial of the second cause of action for damages. The trial court decided the declaratory relief action in favor of plaintiffs. The same judge presided over the jury trial for damages.

Plaintiffs advised the court that their cause of action for damages was predicated upon abuse of process, and they proceeded to trial on that theory. The case did not reach the jury, however, as defendant's motion for nonsuit was granted.

From the pleadings, it is difficult to tell the nature of plaintiffs' second cause of action. They pleaded the original loan agreement with monthly payments including impound for taxes and insurance, and that the impounds were increased beyond amounts legally chargeable, including an excessive demand for late charges. They also alleged that defendant was notified, both orally and in writing, that the charges exceeded those agreed upon, that plaintiffs suggested that defendant seek advice of counsel in interpreting the loan instruments but nevertheless defendant threatened to foreclose upon and sell plaintiffs' property if they did not comply with ''defendant's extortionate demands.'' It is then charged that defendant, in pursuance of these threats, caused a notice of default to be recorded on January 29, 1964, in the official records of the County Recorder of the County of Kern, and on May 7, 14 and 21, 1964, caused to be published a notice of trustee's sale to be held May 29, 1964.

Plaintiffs premised their claim for damages upon the allegations that each of them suffered ''great distress of mind

consisting of humiliation, and embarrassment before their friends, neighbors, and the public at large to the damage of each of them in the sum of $5,000.00 for a total sum of $10,000.00," and that "in doing all things herein alleged, defendants acted maliciously and with a wanton disregard of the rights and feelings of plaintiffs, and their acts are and were entirely against public policy, and by reason thereof, plaintiffs demand exemplary and punitive damages against 'said defendants in the sum of $100,000.00." Abuse of process, as such, is not pleaded.

The pretrial order conforms to the complaint. Apparently the trial judge was not clear as to the theory of the second cause of action because when defendant moved for a nonsuit, the following colloquy between plaintiffs' counsel and the court occurred:

"BY THE COURT: Very well. Now let's get back to the main question and that is what theory are you proceeding under.

"MR. MEADOWS: Your Honor . . .

"BY THE COURT: What is the basis of the liability that you contend is present in this case?

"MR. MEADOWS: Your Honor, I am still proceeding on an abuse of process theory.

"BY THE COURT: All right, you are not proceeding on any question of slander of title are you?

"MR. MEADOWS: No your Honor.

"BY THE COURT: All right, I want that clear. Abuse of process is your real basis for your position that the defendant is liable."

Thereafter the trial court granted the motion for nonsuit, upon the ground plaintiffs had failed to plead or prove a prima facie case of abuse of process.

The few California cases concerning abuse of process all approve the definition of that tort as delineated in 3 Restatement of Torts, section 682, page 464. ▌ The gravamen of the cause of action lies in the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. (*Tranchina* v. *Arcinas*, 78 Cal.App.2d 522, 524 [178 P.2d 65]; *Pimentel* v. *Houck*, 101 Cal.App.2d 884, 886 [226 P.2d 739]; *Tellefsen* v. *Key System Transit Lines*, 198 Cal.App.2d 611, 613 [17 Cal.Rptr. 919]; *Kyne* v. *Eustice*, 215 Cal.App.2d 627, 631 [30 Cal.Rptr. 391]; *Coy* v. *Advance Automatic Sales Co.*, 228 Cal.App.2d 313, 318 [39 Cal.Rptr. 476]; *Thornton* v. *Rhoden*, 245 Cal.App.2d 80, 94 [53 Cal.Rptr. 706].)

Perhaps the most exhaustive review of abuse of process in a· California case is found in *Spellens* v. *Spellens*, 49 Cal.2d 210 [317 P.2d 613], wherein the Supreme Court, after approving the definition in 3 Restatement of Torts, section 682, page 464, quotes the definition of Mr. Justice Pound in *Dean* v. *Kochendorfer*, 237 N.Y. 384 [143 N.E. 229] : " 'The gist of the action for abuse of process lies in the improper use of process after it is issued. *To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough.*' " (P. 231.) (See also Prosser, Law of Torts (3d ed.) p. 876; 1 Harper & James, The Law of Torts, § 4.9, p. 330; 1 Am. Jur.2d p. 250.)

We are confronted with the question whether recording a notice of default and publishing a notice of trustee's sale pursuant to the terms of a deed of trust constitute process in the sense that the term "abuse of process" is used in the law.

Bouvier's Law Dictionary defines process as "The means of compelling a defendant to appear in court, after suing out the original writ, in civil, and after indictment, in criminal, cases. . . . A writ, warrant, subpoena, or other formal writing issued by authority of law; . . ."

The case of *Lobrovich* v. *Georgison*, 144 Cal.App.2d 567, 574 [301 P.2d 460], says that "Process is a means whereby a court compels a compliance with its demands."

Thus, the essence of the tort "abuse of process" lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. Since defendant took no action pursuant to authority of court, directly or by ancillary proceedings, no judicial process was abused.

Plaintiffs argue that intentionally posting notice of default and notice of sale under the provisions of the deed of trust is analogous to a foreclosure action. That is, if such an action were filed and a court order obtained for a sale to accomplish a wrongful purpose, abuse of process would lie. But a foreclosure action is a court proceeding, and we find no case extending the definition of "process" to a proceeding that in nowise emanates from or rests upon the authority or jurisdiction of a court. In *Tellefsen* v. *Key System Transit Lines, supra,* the plaintiff's complaint charging abuse of process was predicated upon an appeal from a judgment for personal injuries; the wrongful filing of an unmeritorious appeal for an ulterior

motive was alleged to be the process abused. The reviewing court refrained from determining whether intentionally and maliciously taking a frivolous appeal constituted abuse of process even though it entailed a judicial proceeding. The court observed, in passing, that "Process has normally been considered to mean those actions that are initiated either independently, such as the original commencement of a suit, or those processes initiated collaterally, such as an attachment." (P. 613.)

There is dictum in *Thornton* v. *Rhoden, supra,* that comes much closer to plaintiffs' contention. In *Thornton* the plaintiff contended that a deposition was taken for an improper purpose to obtain a collateral advantage not properly involved in the proceeding itself. The court commented: "Although the giving of a notice that a deposition will be taken is not 'process' in the strictest sense of the word we are inclined to the belief that in a proper case an abuse of the powers which a litigant derives from the taking of a deposition on proper notice gives such notice the status of 'process' for the purpose of the tort under consideration. [Citation.] We will also assume, without deciding, that the taking of a deposition for the sole purpose of permitting the papers to publicize defamatory matter which they might hesitate to print unless protected by the privilege set forth in section 47, subdivision 4 of the Civil Code and the use of the deposition transcript for the purpose of bringing such matters to the attention of the press, is the type of conduct which is condemned." (Pp. 94-95.)

Had the court, in *Thornton,* felt compelled to decide that the improper taking of a deposition is within the ambit of abuse of process, it would be of little comfort to plaintiffs here. A deposition is taken ancillary to the filing of a lawsuit or a legal proceeding of some sort; it is an act inherent in the judicial process.

Interestingly enough, abuse of process emerged as a tort action through decisional law to provide redress of a wrong for which previously there had been no remedy. It was an extension of the cause of action, or at least it complements the cause of action, that arises when an action is wrongfully prosecuted or process is wrongfully caused to be issued. Plaintiffs argue that by parallel reasoning the principles motivating this development in the law impel its extension to the wrongful use of notice of default and power of sale pursuant to a deed of trust. It is argued that this proceeding, which has the sanction of law, is subject to abuse in much the same

manner as process issued by a court. Plaintiffs rely upon Civil Code section 3523, "For every wrong there is a remedy."

Plaintiffs' principal reason for seeking relief on the theory of abuse of process appears to be that in a breach of contract action or a slander of title action they would not be entitled to recover general or punitive damages for the humiliation, embarrassment and mental distress they allege they suffered. But it is not necessary to enlarge the scope of the action "abuse of process" to afford relief in these circumstances. There is a remedy in tort for an intentional breach of contract. (See 2 Witkin, Summary of Cal. Law (1960) Torts, p. 1172; 1 Witkin, Cal. Procedure (1954) Actions, p. 525; Prosser, Law of Torts (3d ed.) p. 638.) The principle is expressed in *Jones* v. *Kelly,* 208 Cal. 251, 255 [280 P. 942], in the following language: "The law imposes the obligation that 'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights.' [Citation.] This duty is independent of the contract and attaches over and above the terms of the contract. This being so, the plaintiffs may treat the injury as a tort or as a breach of contract at their election." (See also *Eads* v. *Marks,* 39 Cal.2d 807, 811 [249 P.2d 257]; *Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654, 663 [328 P.2d 198].)

In a tort action, the fact that the tort alleged may also constitute a breach of contract does not foreclose the awarding of both general and punitive damages. (*Ward* v. *Taggart,* 51 Cal.2d 736 [336 P.2d 534]; *Coleman* v. *Ladd Ford Co.,* 215 Cal.App.2d 90, 94 [29 Cal.Rptr. 832].)

We find no necessity for extending the rationale of abuse of process to provide a remedy for the wrong plaintiffs allege they suffered.

The judgment is affirmed.

Conley, P. J., concurred.

Gargano, J., being disqualified, did not participate.

A petition for a rehearing was denied June 2, 1967. Gargano, J., being disqualified, did not participate therein. Appellants' petition for a hearing by the Supreme Court was denied July 26, 1967.