Hillsborough
No. 7674

ROBERT AND CAROLE AMABELLO

v.

COLONIAL MOTORS a.k.a. ANDY'S MOTOR SERVICE

June 27, 1977

*James M. Winston,* of Manchester, by brief and orally, for the plaintiffs.

*Prunier & Mazerolle,* of Nashua (*Mr. Jeffrey H. Mazerolle* orally), for the defendant.

KENISON, C.J. The plaintiffs' automobile was involved in an accident on March 9, 1972, and was taken to the defendant for repairs the next day. An insurance adjuster appraised the damage and offered the defendant $2,700 to fix the car, which offer the defendant accepted. In October 1972, the defendant told the plaintiffs that their car was ready. After an inspection, however,

Mrs. Amabello refused to accept the car because, in her opinion, it was not fully and adequately repaired. On November 27, 1972, the defendant informed the plaintiffs by letter that storage charges would be assessed beginning on that day. On January 12, 1973, a notice was issued pursuant to RSA ch. 450 stating that the car would be sold on February 1, 1973, to satisfy a lien for storage and labor.

Plaintiffs enjoined the sale, paid the bill and removed the car from defendant's premises. Thereafter, they brought a suit for damages based upon two counts, one for breach of contract regarding the repairs and one in tort for abuse of process in attempting to sell the automobile. The court, upon the defendant's motion, dismissed the tort claim. The jury trial on the contract claim resulted in a verdict for the plaintiffs of $3,500. The defendant made two motions, one to vacate the verdict and one for judgment notwithstanding the verdict. On June 10, 1975, *Bois, J.*, granted the first motion and ordered a new trial. The plaintiff moved for a rehearing on this decision. Nearly one year later on June 8, 1976, the trial court denied the motion for rehearing, reversed the granting of a new trial and entered a verdict for the defendant. All exceptions to such rulings were reserved and transferred to this court.

■ The first issue is whether the court erred in dismissing the plaintiffs' count for abuse of process. The defendant argues first that notice of intent to sell under RSA ch. 450 does not constitute "process" for the purposes of the abuse of process tort. We have been unable to find New Hampshire cases that specify the scope of the term "process" in this context. Definitions of the tort consistently describe the "process" as some activity or procedure involving the exercise, or dependent upon the existence, of judicial authority. For example, in holding that the submission of interrogatories in a civil action constituted process, a California court noted that interrogatories were enforced with sanctions by the trial court and that the tort covered "procedures incident to litigation." *Younger v. Solomon*, 38 Cal. App. 3d 289, 296–97, 113 Cal. Rptr. 113, 118 (1974). Another court has referred to the tort as a catch-all for the improper use of the *judicial* machinery. *Italian Star Line v. United States Shipping Bd. E. F. Corp.*, 53 F.2d 359, 361 (2d Cir. 1931).

Another case states that "[t]o charge an abuse of process there must be a perversion of *court* processes . . . ." *Williams v. City*

*Stores Co.,* 192 A.2d 534, 537 (D.C. Ct. App. 1963) (emphasis added). We think the closest case on point is *Meadows v. Bakersfield Savings & Loan Ass'n,* 250 Cal. App. 2d 749, 59 Cal. Rptr. 34 (1967), in which the court stated that the essence of the tort "lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. . . . [W]e find no case extending the definition of 'process' to a proceeding that in nowise emanates from or rests upon the authority or jurisdiction of a court." 250 Cal. App. 2d at 753. The court went on to hold that recording a notice of default and publishing a notice of a trustee's sale did not constitute process. We hold that the notice issued under RSA ch. 450 did not involve process, and thus the trial court was correct in dismissing the plaintiffs' tort claim.

■ The second issue is whether the court erred in setting aside the verdict for the plaintiffs, granting a new trial and then, one year later, entering a verdict for the defendant. We begin our analysis with a consideration of the plaintiffs' evidence and the trial court's decisions with respect to its admissibility. The plaintiffs' first witness, Mr. Madden, had originally appraised the damage to the vehicle. He was asked to describe the condition of the car when he viewed it six months after it had left the defendant's control. Defendant's counsel objected on the ground that the witness's observation was too remote. Plaintiffs' counsel assured the court that the car had been used sparsely between July 1973, when it left the defendant's control, and December 1973, when Mr. Madden saw it, and that the car had not been involved in any other accidents. Upon these representations, the court allowed Mr. Madden to testify that, when he viewed the car in December 1973, many of the same defects existed as when he appraised the damage initially.

Another witness, Mr. Savoie, an auto repairman, testified that many of the same defects existed in the car in March 1974. He also described his attempts to repair the frame and rear axle. The defendant objected on the ground that Mr. Savoie inspected and repaired the car nearly a year after it left the defendant's control. At this point plaintiffs' counsel stated, "I make the same offer of proof I made throughout when this objection has been raised, namely, the evidence will be that there was no intervening accidental damage that in any way changed the condition of the car from the time it was released by Colonial Motors to the time that

this individual examined it." The court decided that, based upon this representation, the evidence would be admitted.

We regard the testimony of Mr. Madden and Mr. Savoie as having been admitted *de bene esse,* that is, admitted upon the condition that facts not yet in evidence would be subsequently proved. *Doe v. Lucy,* 83 N.H. 160, 164, 139 A. 750, 752 (1927); C. Mc-Cormick, Evidence § 58 (2d ed. 1972). The representation that the car was used sparsely was somewhat negated or undermined by the introduction of testimony tending to indicate that the car had been driven 16,000 miles between July 1973 and June 1974. Upon hearing this evidence, it would not have been an abuse of discretion to strike the testimony of Mr. Madden and Mr. Savoie on the grounds of remoteness. *Manseau v. Railroad,* 96 N.H. 7, 12, 69 A.2d 613, 617 (1949).

On the other hand, the fact that the car had been driven 16,000 miles since it left defendant's control would not automatically render inadmissible the testimony concerning the condition of the frame and the repairs made on it. The primary defect alleged was that the car's frame was bent or twisted. With respect to this kind of defect, the mileage factor could be regarded as insignificant because the number of miles a car has been driven does not ordinarily affect the straightness of the frame. If the complaint involved parts that generally wear out through use, the mileage problem would have been more significant.

In any event, the trial court did not strike the testimony of Mr. Madden and Mr. Savoie. The plaintiffs continued their case presenting other testimony and documents, including Mrs. Amabello's own testimony to the effect that the car was not properly repaired and that the defendant did not complete the work it agreed to do. At the close of the trial, the defendant moved for a directed verdict which the court denied. At this point the mileage problem was again raised, this time out of the presence of the jury. The judge did not accuse the plaintiffs' counsel of any intentional misrepresentation but did express his opinion that the evidence relating to the inspection and repair of the car after it left defendant's control was "improper."

In setting aside the jury verdict for the plaintiff and ordering a new trial, the judge did not find the jury to have been motivated by "passion, prejudice, partiality, corruption or plain mistake." *Bennett v. Larose,* 82 N.H. 443, 447, 136 A. 254, 256 (1926); *Underhill v. Baker,* 115 N.H. 469, 343 A.2d 643 (1975).

Instead, the problem was that the "improper" evidence should have been but was not excluded from the jury's consideration. The court obviously felt that this evidence was very prejudicial and misleading and took the action it deemed appropriate. Under these circumstances we cannot say that the court erred. Erroneous admission of prejudicial evidence is a proper ground for setting aside the verdict, *Piechuch v. Magusiak*, 82 N.H. 429, 135 A. 534 (1926); *see Doe v. Lucy*, 83 N.H. 160, 139 A. 750 (1927), and awarding a new trial. *Weiner v. Serps Auto Wreckers*, 24 N.Y.2d 845, 248 N.E.2d 601, 300 N.Y.S.2d 852 (1969); F. James, Jr., Civil Procedure § 7.17, at 300 (1965).

 We turn now to consider the trial court's decision to enter a verdict for the defendant. It makes no difference whether we characterize the order as a directed verdict or a judgment notwithstanding the verdict, because the two motions are essentially the same and are controlled by identical standards. *Butler v. O'Brien*, 8 Ill. 2d 203, 209, 133 N.E.2d 274, 277 (1956); F. James, Jr., *supra* § 7.22, at 334. There is, however, a significant difference between the rigorous standard for a directed verdict or judgment n.o.v. and the more lenient test for a new trial. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2531 (1971). A party is entitled to judgment n.o.v. " 'only when his case is established by the sole reasonable inference from undisputed facts.' " *Skivington v. Robinson*, 106 N.H. 493, 496, 213 A.2d 921, 923 (1965). The court must construe the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion. *Dubreuil v. Dubreuil*, 107 N.H. 519, 229 A.2d 338 (1967). It cannot weigh the evidence or judge the credibility of the witnesses, and, if the evidence is conflicting or several reasonable inferences may be drawn, the motion for judgment n.o.v. should be denied. *Hauter v. Zogarts*, 14 Cal. 3d 104, 120 Cal. Rptr. 681, 534 P.2d 377 (1975). It should be granted only when all of the evidence viewed most favorably to the opponent so overwhelmingly favors the moving party that no contrary verdict based upon that evidence could ever stand. *Guenther v. Hawthorn Mellody, Inc.*, 27 Ill. App. 3d 214, 326 N.E.2d 533 (1975).

 After thoroughly reviewing all the evidence in the case and applying the above principles, we conclude that entering a verdict for the defendant was improper. The plaintiffs' evidence, if believed by the jury, was sufficient to support a verdict in their

favor. *Couture v. Marquis,* 107 N.H. 47, 50–51, 217 A.2d 175, 177 (1966). The problem of the improperly admitted evidence may be remedied by a new trial. "[W]here there is a substantial chance that upon the new trial the party who won the first verdict can fill the gap in his claim or defense and properly prevail on the merits" a new trial should be ordered. F. James, Jr., *supra* § 7.22, at 331; *see Herro v. Dept. of Natural Resources,* 67 Wis. 2d 407, 413, 227 N.W.2d 456, 462 (1975). Therefore, the order granting the verdict to the defendant is vacated, and the trial court's original order granting a new trial is reinstated.

*So ordered.*

BOIS, J., did not sit; the others concurred.